IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **COURTNEY DOUGLASS, on behalf of herself and all others similarly situated,** | § § § § | **CIVIL ACTION** |
| Plaintiffs, | § § | NO. 2:12-cv-1524-JHS |
| v. | § § | |
| **CONVERGENT OUTSOURCING, f/k/a ER SOLUTIONS, INC.,** | § § § | |
| Defendant. | § | **CLASS ACTION** |

## MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF THIS COURT:

Defendant Convergent Outsourcing f/k/a ER Solutions, Inc. files this Motion for Summary Judgment and in support thereof would show as follows:

1. Plaintiff's claim is based solely on the use of a symbol, known as a QR code, used to facilitate tracking returned mail which can be seen through the window of an envelope in the return address area of the envelope(s). When the QR code is scanned with a device capable of reading such codes, certain information is revealed. In response to interrogatories, Plaintiff stated that the following is revealed after scanning the QR code on the letter she received:

    ATERSO01,#K#02R-7630549, Courtney Douglass,228 King St Apt 3,,Pottstown, PA, 194645515280,R241,802.04

2. Plaintiff alleges that the use of this QR code violates § 1692f(8) of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*[1] which provides that the following is a violation:

    Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by

---

[1] Referred to hereafter as "FDCPA."

telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

3. The elements of each claim or defense as to which summary judgment is sought are:

   a. That the QR code in question is a "benign" symbol the use of which is not actionable under the FDCPA;

   b. The QR code does not indicate that the purpose of the letter is debt collection;

   c. The QR code does not indicate that reference is made to a debt which is past due;

   d. The QR code did not cause Plaintiff to experience any form of embarrassment.

4. Plaintiff cannot recover merely by showing the use of a symbol other than Defendant's address. In *Strand v. Diversified Collection*, 380 F.3d 316 (8th Cir. 2004), the trial court granted Defendant's motion to dismiss for failure to state a claim upon which relief may be granted "declining to adopt a strict reading of *§ 1692f(8)*,[1] *id*. at 317. The *Strand* court stated:

> Because an interpretation of *§ 1692f(8)* exempting benign words and symbols better effectuates Congressional purpose, and because a strict reading would lead to bizarre and impracticable consequences, we conclude the statute does not prescribe benign language and symbols such as those printed on the envelopes Ms. Strand received from DCS.

*Id*. at 319. The Eight Circuit upheld the trial court's dismissal of the action.

5. In *Goswami v. American Collections*, 377 F.3d 488 (5th Cir. 2004), the Court found that § 1692f(8) "was intended merely to prevent debt collectors from embarrassing debtors by announcing the delinquency on the outside of the a debt collection letter envelope," *id*. at 494. In doing so, the Court observed that all courts that considered the issue found that "benign" language or symbols did not violate § 1692f(8).

6. In order to violate § 1692f(8), the symbol or language at issue must indicate that the purpose of the letter is debt collection. *See Johnson v. NCB*, 799 F. Supp. 1298 (D. Conn. 1992); *Linbergh v. Transworld*, 846 F. Supp. 175 (D. Conn. 1994), *Masuda v. Thomas Richards*, 759 F.

---

[1] Emphasis in original.

Supp. 1456 (C.D. Calif. 1991), and *Davis v. Baron's*, 2001 U.S. Dist. Lexis 19008 (N.D. Ill. 2001).

7. In addition, the *Goswami*, *supra*, case holds that the symbol must "announce a delinquency." Thus, it is not sufficient for recovery to merely show that a reference is made to debt collection. If the allegedly offensive language or symbol references a debt not yet past due, there is no violation. *See also* the *Johnson* and *Davis* cases, *supra*. A symbol which does not cause embarrassment or announce a delinquency cannot be actionable.

8. Plaintiff has suffered no harm as a result of the use of the QR code.

```
17  Q.   To your knowledge have you been harmed?
18  A.   Not to my knowledge.
19  Q.   You haven't spent any money or had to spend any
20       money because of that QR code, have you?
21  A.   No.²
```

If Plaintiff suffered no harm by the use of the symbol, then such symbol is benign and is therefore not actionable.

9. In fact, Plaintiff did not even know what information could be revealed by the QR code until after she had consulted her attorney and was not concerned about the QR code until after she spoke with her attorney.

```
 7  Q.   Did you scan Exhibit-8³ before you gave it to your
 8       attorney?
 9  A.   No.
10  Q.   So you had no idea what the little QR code
11       revealed before you gave that letter to your
12       attorney?
13  A.   That's correct. ⁴

* * * * * * * * * * *
25  Q.   But you didn't read it before you gave Exhibit-8
 1       to Mr. Flitter?
 2  A.   No.⁵
```

---

² 24/17 – 21. All references to "page/line(s)" are references to the deposition of Plaintiff, Courtney Douglass taken in this cause on September 14, 2012. A copy of all referenced pages are attached hereto as Exhibit A.
³ Exhibit 8 is the letter in question which include the QR code at issue.
⁴ 9/7 – 13.
⁵ 19/25 – 20/2.

> \* \* \* \* \* \* \* \* \* \* \*
>
> 6  Q.   I assume you received Exhibit-8 at your house?
> 7  A.   Correct.
> 8  Q.   Did you get it out of the mailbox or did somebody
> 9     else?
> 10  A.   I don't remember.
> 11  Q.   Did anybody say anything to you about the letter?
> 12  A.   No.
> 13  Q.   Is it fair to say you weren't concerned about the
> 14     QR code until after you had given Exhibit-8 to your
> 15     attorney?
> 16  A.   That would be fair.[6]

10. Plaintiff was not embarrassed as a result of the use of the QR code, either.

> 18  Q.   Do you claim to have been embarrassed by the QR
> 19     code on your letter?
> 20  A.   No.[7]

11. Neither did the QR code reveal that the correspondence was from a debt collector. Obviously, if the information provided does not reveal that the correspondence was from a debt collector, it cannot reveal either that the correspondence related to the collection of any debt, much less a delinquent debt.

> 13  Q.   Is it your position that the information on
> 14     Exhibit-7[8] reveals the identity of the debt
> 15     collector?
> 16  A.   Yes.
> 17  Q.   Where does it identify the debt collector?
> 18  A.   It has right here my name, the account
> 19     information, my address, zip code, and then the
> 20     amount of debt is there as well.
> 21  Q.   Where does it identify a debt collector?
> 22  A.   You mean your --
> 23  Q.   Any debt collector?
> 24  A.   Well, no, I'm not -- I don't see a debt collector.
> 25     I just see my information there.
> 1  Q.   So you're not claiming that Exhibit-7 reveals the
> 2     identity of a debt collector?
> 3  A.   Can you say that a little bit differently? Say
> 4     that again.
> 5  Q.   Are you claiming that the information on Exhibit-7
> 6     reveals the identity of a debt collector?

---

[6] 19/6 – 16.
[7] 23/18 – 20.
[8] Exhibit 7 is a document created by Plaintiff's attorney which shows the information revealed when the QR code is scanned.

```
 7  A.    The debt collector being myself or the debt
 8        collector being ERS Solutions?
 9  Q.    Somebody who collects debts.
10  A.    Okay.  No, I don't see any information on here
11        about the debt collector.[9]
```

12. Plaintiff wants to claim that the QR code revealed her account number and that this somehow may have caused her harm.  However, the information she is referring to is the internal account number of Defendant and Plaintiff could not even make that determination without opening and reading the letter.

```
12  Q.    Do you claim that the QR code when you read it
13        reveals an account number?
14  A.    I do.
15  Q.    Where is the account number in Exhibit-7?
16  A.    The account number is right here in the middle.
17  Q.    Would you read that for me?
18  A.    Sure.  The account number?
19  Q.    Just the account number, yes, ma'am.
20  A.    76305459.
21  Q.    How do you know that's an account number?
22  A.    Because it matches the numbers on the letter.
23  Q.    And you would have to open the envelope and read
24        the letter to know that, wouldn't you?
25  A.    Yes, I would -- yes, or -- and you can see it also
 1        right here, above the address.
 2  Q.    And that account number is not your account number
 3        that you had with T-Mobile, is it?
 4  A.    I don't know.  I don't know if it is or not.
 5  Q.    Well, look at Exhibit-8, if you would.  You see
 6        right here it identifies -- it gives two account
 7        numbers, does it not?
 8  A.    That's correct.
 9  Q.    And one is the ERS account number?
10  A.    That is correct.
11  Q.    And the other one says --
12  A.    Client account number.
13  Q.    You didn't recognize that number, 76305459 as an
14        account number until you opened the letter; is that
15        right?
16  A.    Correct.[10]
```

13. Plaintiff likewise attempts to claim that the QR code contains information about her account balance.  To the contrary, her testimony shows that the QR code does not reveal her account balance of $802.04, instead including the number 241,802.04 without a dollar sign or

---

[9] 11/13 – 12/11.
[10] 12/12 – 13/16.

any other indication that this number refers to any amount.  Even if Plaintiff is correct in her assertions that the number in question is her account balance, she acknowledges that she would not have known that until she opened and read the letter.

> 8  Q.   Do you claim that the QR code reveals an account
> 9     balance?
> 10  A.   I do think so, yes.
> 11  Q.   And what account balance does it reveal?
> 12  A.   802.04.
> 13       MR. FLITTER:  You're very soft spoken.
> 14     Just keep your voice up, please.
> 15       THE WITNESS:  802.04.
> 16  BY MR. WALTON:
> 17  Q.   That number isn't actually 802.04?
> 18  A.   Yes, it is.  802.04.
> 19  Q.   Isn't it 241,802.04?
> 20  A.   That's what it says, but that's the balance amount
> 21    because it matches the same thing that's on the
> 22    letter.
> 23  Q.   But you wouldn't know that until you opened the
> 24    envelope, would you?
> 25  A.   I guess. I guess. I don't know. I guess. I
> 1    wouldn't know that, but you never know what somebody
> 2    else might know.
> 3  Q.   Did you know how much T-Mobile claimed you owed
> 4    them before you opened the letter?
> 5  A.   No.
> 6  Q.   So even if you had read the QR code before you
> 7    opened the letter, you wouldn't have known that was
> 8    the account balance, would you?
> 9  A.   I don't believe I would have known that.[11]

14. Even if the QR code did reveal that it referenced debt collection, there is no indication that the alleged revelation of the debt involved a delinquency.

> 1  Q.   Is there anything about the information revealed
> 2    when you read that QR code that indicates the debt
> 3    is past due or delinquent?
> 4  A.   No, I don't think.[12]
>
> * * * * * * * * * * *
>
> 4  Q.   But there was nothing in the QR code that shows it
> 5    referred to a delinquent debt, is there?
> 6  A.   You mean like wording wise?
> 7  Q.   Any wise, you claim that the information revealed
> 8    by the QR code indicates a debt?

---

[11] 17/8 – 18/9.
[12] 24/1 – 4.

```
 9  A.   And it does.
10  Q.   Does it indicate that it's a delinquent debt?
11  A.   No, it just indicates a debt.[13]
```

15. Plaintiff has testified that she believes that the information revealed by scanning the QR code could be used for the purposes of identity theft.

```
 2    I'll ask it again if you want me to.
 3    What about the information that's revealed in the QR
 4    code would do you [h]arm?
 5  A.   Well, having the account information, which I
 6    said, and also, you know, just having -- being able
 7    to just scan it and be able to get the account
 8    information off there, and that is a debt, but just
 9    being able to get that information, you should not
10    be able to do it, just the bottom line.
11  Q.   How are you harmed by it?
12  A.   I don't know.
13  Q.   How could you be harmed by it?
14  A.   Easily.  People can steal people's identities all
15    the time.
16  Q.   What in the information on Exhibit-7 would enable
17    anyone to steal your identity?
18  A.   They can use any of those numbers, the account
19    number, my name, the debt amount, any of that.
20  Q.   How could they use the account number to steal
21    your identity?
22  A.   Well, maybe they could get the account information
23    and call up these people, ERS Solutions, act like
24    me, get information.  I don't know how people steal
25    people's identities.

 1    I don't know.  I don't want to assume.  I don't
 2    know.
 3  Q.   So you can't tell me as we sit here today --
 4  A.   I'm not -- I'm sorry.  I apologize.
 5          MR. FLITTER:  You want to finish?
 6          MR. WALTON:  It's different.
 7  BY MR. WALTON:
 8  Q.   As you sit here today you don't know any way that
 9    anyone could take the account number on Exhibit-7
10    and steal your identity, do you?
11  A.   Because I'm not an identity theft person, I don't
12    know.  That doesn't mean somebody else doesn't know,
13    sir.
14  Q.   Have you ever heard of anyone whose identify was
15    stolen when the thief had nothing other than an
16    account number to go by?
17  A.   No, I've never heard anybody.
18  Q.   Is there any other information on Exhibit-7 that
```

---

[13] 44/4 – 13.

```
19    you believe could be used to harm you?
20 A. Other than the account number and the debt amount,
21    no. No.
22 Q. And even if someone knew that numbers referred to
23    an account balance, how would they use an account
24    balance to do you harm?
25 A. I don't know, sir, what people would do with

1    people's personal information.  I don't know.  I
2    just know it's put out there for them to use.
3    I don't know what they do when they get it.  I know
4    it's put out there.[14]
```

16. However, the information revealed by scanning the QR codes cannot be used for the purposes of identity theft. Attached hereto as Exhibit B is the report of Kevin Barrows, a former FBI investigator in the area of identity theft and an expert in this area. Mr. Barrows clearly states: "The information contained in the QR code on the mailings sent by ER Solutions to Plaintiffs does not pose a threat of identity theft." Mr. Barrows further expresses the following opinions:

> a. neither the amount of a debt owed, even if decipherable, nor an internal account number for ER Solutions enhance Plaintiffs' risk of identity theft;
>
> b. A thief knowing the amount of a debt and an account number for a debt collection agency poses no more risk of identity theft that merely having a name and address;
>
> c. Even if the thief was somehow able to obtain the underlying account number for Verizon and T-Mobile (and there is no evidence that this is the case), the thief would need to provide the mobile carriers with an account security code, social security number, or other personal identifying information before being able to access the accounts;
>
> d. When the QR code is decoded the identity of ER Solutions and the amount of the debt are represented numerically and not obvious or apparent. Even if this information were apparent, it is of no value to an identity thief.

17. **Summary Judgment Standard** – Summary judgment is warranted if the pleadings, discovery, disclosure materials, and supporting affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R.

---

[14]    25/2 – 27/4.

Civ. P. 56(c).  A genuine issue of material fact exists when a reasonable jury could find for the non-moving party. *Gates v. Tex. Dep't of Protective & Regulatory Serv., 537 F.3d 404, 417 (5th Cir. 2008)* (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)*; *Lynch Props., Inc. v. Potomac Ins. Co., 140 F.3d 622, 625 (5th Cir. 1998)* (citing *Celotex, 477 U.S. at 325*).

18. Defendant has shown that there is no genuine issue as to any material fact regarding whether or not the QR codes in question is a benign symbol.  Plaintiff's own testimony reveals that she has not been harmed by the information revealed by scanning the QR code.  The opinion of Kevin Barrows further shows that the information revealed is not capable of being used to steal someone's identity.

19. Plaintiff's testimony likewise shows that the information revealed does not indicate that the letter was for the purpose of debt collection and even further does not indicate the existence of a delinquent debt. Although the purpose of the relevant FDCPA provisions is to prevent embarrassment of debtors, Plaintiff has clearly testified that she was not embarrassed by the use of the QR code and did not even know what information was revealed until after she had taken the letter in question to her attorney.

20. Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate, by designating specific facts beyond the pleadings that prove the existence of a genuine issue of material fact. *See Fed. R. Civ. P. 56(e)(2)*; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)*; *Fields v. City of S. Houston, 922 F.2d 1183, 1187 (5th Cir. 1991)*.The nonmoving party may not rest solely on its pleadings.

*King v. Chide*, 974 F.2d 653, 656 (5th Cir.1992).  To meet its burden, the nonmoving party must present "significant probative" evidence indicating that there is a triable issue of fact.  *Conkling v. Turner, 18 F.3d 1285, 1295 (5th Cir.1994).*  If the evidence rebutting the summary judgment motion is only colorable or not significantly probative, summary judgment should be granted. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).*  In determining whether genuine issues of material fact exist, "factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists."  *Lynch Props., 140 F.3d at 625.*

21. Defendant has easily met this burden.  A symbol which 1) does not embarrass Plaintiff, 2) does not otherwise cause harm to Plaintiff, 3) does not reveal that the communication is from a debt collector, and 4) does not indicate that the communication in question involved a delinquent debt cannot be other than "benign."

22. The only information included in the QR code which Plaintiff believes could have harmed her is the account number and the alleged debt amount.

```
18  Q.   Is there any other information on Exhibit-7 that
19       you believe could be used to harm you?
20  A.   Other than the account number and the debt amount,
21       no.  No.[15]
```

As shown by Plaintiff's own testimony, above, it was necessary to open the envelope and read the letter enclosed before either the account number or debt amount could be ascertained.  This shows that the allegedly offending symbol, the QR code, was benign, revealed nothing, did not harm Plaintiff and could not harm anyone else.

23. **No Evidence** – Plaintiff, the non-moving party will have the burden of proof at trial.  A summary judgment movant's burden "may be discharged by "showing" -- that is, pointing out

---

[15]   26\18 – 21.

to the district court -- that there is an absence of evidence to support the nonmoving party's case," *Celotex v. Catrett*, 477 U.S. 317, 325; 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265, 275 (1986). Defendant has pointed out to the Court that there is an absence of evidence of any of the following:

   a. That the QR code, or any information revealed by scanning the QR code, in question is anything other than a benign symbol;

   b. That the QR code, or any information revealed by scanning the QR code, or any other information or material(s) on the outside of the envelope in question revealed that it was for the purpose of debt collection;

   c. That the QR code, or any information revealed by scanning the QR code, or any other information or material(s) on the outside of the envelope in question revealed that it related to a debt that was past due or otherwise delinquent;

   d. That the QR code, or any information revealed by scanning the QR code, in question caused embarrassment to Plaintiff;

   e. That the QR code, or any information revealed by scanning the QR code, could be used for the purpose of identity theft;

   f. That Plaintiff has sustained any form of damages due to Defendant's use of the QR code, or any information revealed by scanning the QR code;

**Conclusion**

24. The symbol at issue is benign.  It does not reveal that the purpose of the letter to which it is affixed was for the purpose of debt collection and does not reference a delinquent debt.  The only information included in the QR code which Plaintiff finds objectionable is meaningless until the letter is opened and read.

25. The purpose of § 1692f(8) is to avoid embarrassment to a debtor.  *See Goswami*, *supra*.  A symbol cannot violate the act unless the debtor can show that they were embarrassed by the symbol.  Plaintiff herself has testified that this did not occur.

26. The information revealed by scanning the QR code is incapable of being used to steal Plaintiff's identity.

WHEREFORE, Defendant respectfully requests that the Court grant Defendant's Motion for Summary Judgment, that the Court enter a take nothing judgment in favor of Defendant and for such other and further relief, both at law and in equity, to which Defendant(s) may be justly and legally entitled.

Respectfully submitted,

**BUSH AND RAMIREZ, LLC**

*//s// Ed Walton*
Keith Wier: TBN:  21436100
Jim Thorpe: TBN: 19989100
Ed Walton: TBN: 20828550
5615 Kirby Dr., Suite 900
Houston, Texas 77005
(713) 626-1555 Telephone
(713) 622-8077 Telecopier

**ATTORNEYS FOR DEFENDANT,
ER SOLUTIONS, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of November, 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Cary L. Flitter
Lundy Flitter Beldecos & Berger, P.C.
450 North Narbeth Ave.
Narbeth, PA 19072-1898

*//s// Ed Walton*
Ed Walton