IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COURTNEY DOUGLASS<br>*on behalf of herself and all others similarly situated,*<br>　　　　　　　　Plaintiff<br><br>vs.<br><br>CONVERGENT OUTSOURCING, f/k/a/<br>ER SOLUTIONS, INC.<br>　　　　　　　　Defendant | NO. 12-1524(JHS)<br><br><br><br><br><br>CLASS ACTION |

## **O R D E R**

AND NOW, this           day of                    , 2013, upon the Defendant's Motion for Summary Judgment and the Plaintiff's Opposition thereto , it is hereby ORDERED that said Motion is DENIED.

BY THE COURT:

_____
JOEL H. SLOMSKY, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COURTNEY DOUGLASS<br>*on behalf of herself and all others similarly situated,*<br>　　　　　　　Plaintiff<br><br>vs.<br><br>CONVERGENT OUTSOURCING, f/k/a/ ER SOLUTIONS, INC.<br>　　　　　　　Defendant | NO. 12-1524(JHS)<br><br><br><br><br><br>CLASS ACTION |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I.　INTRODUCTORY STATEMENT

Before addressing the merits of Defendant's Motion for Summary Judgment (Docket No. 36), a very brief review of the procedural history of the case is necessary. This matter arises under the Fair Debt Collection Practices Act subchapter of the Consumer Credit Protection Act, 15 U.S.C. § 1692. On November 7, 2012, the Court issued an Order (Docket No. 28) permitting Plaintiff to file a Second Amended Complaint ("SAC"). Two days' later, on November 9, 2012, Ms. Douglass filed of record the Second Amended Complaint (Docket No. 29). The Second Amended Complaint, *inter alia*, pled that Defendant had violated the Act in two ways: 1) by its use of the QR Code visible through the window envelope, and 2) that "through the window of the envelope there is visible the account number assigned to the consumer recipient." (SAC, Docket No. 29, ¶ 14 and ¶ 2.) The earlier Complaint(s) did not plead the presence of the visible account number in the glassine window as a violation.

On November 26, 2012, Defendant filed its Answer (Docket No. 32) to the Second Amended Complaint. Four days later on November 30, 2012, Defendant filed the instant Motion for Summary Judgment (Docket No. 36). Notably, Defendant chose not to move on the issue of

the account number, and the instant Motion for Summary Judgment addresses only the QR Code.[1] (*See* Motion for Summary Judgment, Docket No. 36, ¶ 1-3).

Therefore, in responding here to Defendant's Motion for Summary Judgment, Plaintiff will, to make a fully informed record, touch on the issue of the account number violation, and why it is a viable claim. However, in doing so, Plaintiff does not intend to waive her position that Defendant's Motion is, in effect, one for partial summary judgment, addressing only the QR Code claim raised in Defendant's Motion. *See* Fed. R. Civ. P. 56(a)(party may move for partial summary judgment). While Douglass does not suggest that Defendant intends to raise a new issue in reply, Douglass points out the rather obvious point that doing so would be inconsistent with Judge Slomsky's Motion Procedures (*see* Docket No. 45, ¶ h) and with Fed. R. Civ. P. 56(c); *See also Leitch v. MVM, Inc.*, 2004 WL 1638132 *10 (E.D. Pa. Jul. 22, 2004)(argument first raised in reply not considered).

Finally, Plaintiff notes that she has moved for class certification (Docket No. 49) and Defendant has opposed (Docket No. 50). Plaintiff's reply is due on or before May 31, 2013 (Order of January 10, 2013, Docket No. 47, ¶ g), however, Plaintiff intends to file her reply in support of class certification by May 17, 2013. A hearing on Plaintiff's Motion for Class Certification and Defendant's Motion for Summary Judgment has been (re)scheduled for May 29, 2013 at 10:00 a.m. (Docket No. 51).

## II.  RELEVANT FACTS

The threshold complaint here is that a collection agency by the name of ER Solutions, which was later renamed Convergent Outsourcing, sent Ms. Douglass and approximately 2504 other Montgomery County, Pennsylvania consumers a form collection notice materially identical

---

[1] At one point in time, Defendant indicated that it might refile or amend its Motion for Summary Judgment. *See* Plaintiff's Supplemental Statement (Docket No. 48, ¶ 5). Perhaps for strategic or other reasons, Defendant chose not to do so.

2

to Exhibit "A" hereto. The top portion of the letter is reproduced here (save partial redaction per Rule 5.2):




(Exhibit "A").

### Window Envelope

According to Lisa Burton, Client Service Manager at Convergent, Exhibit "A" (a portion of which is reproduced above) is a form letter that Convergent calls an "R241 letter." (Exhibit "B", Burton depo. dated Jan. 30, 2013 at pp. 41-42). The "R241" reference appears just to the right of the account number, immediately above the consumer's name and address. Convergent uses a mail vendor called RevSpring (formerly Dantom Systems) to print and mail the letter to consumer debtors. (*Id.*). The R241 is mailed in a window envelope, through which the recipient's account number (here "xxxx5459" for Courtney Douglass) is visible above the recipient's name and USPS bar code. (*See* Exhibit "C" dep. testimony of Robert Flynn, CFO of RevSpring, taken Feb. 15, 2013 at pp. 27-31). The account number visible through the glassine window of the envelope "corresponds to the [Convergent] account number" and is visible without any type of scanning device. (*Id.* at p. 30).

### QR Code

Ms. Douglass's account number: "xxxx5459", as well as the amount claimed due: "802.04", are also revealed in the quick response (or "QR") Code in the top left corner of the

mailing. (*See* Exhibit "A"). When the QR Code is scanned by a QR reader available as an application on a cell phone or iPad device, it reveals the following:



("Exhibit " D" hereto). According to RevSpring's CFO Robert Flynn, the number field populated within "802.04" corresponds with the amount of the debt the collection letter was attempting to collect. (Exhibit "C", Flynn depo. at pp. 22-25). The numbers "xxxx5459" in the scan are the same digits that make up Ms. Douglass's Convergent account number. (*Id.* at p. 38). This account number field in the QR printout corresponds to the Convergent account number field shown through the window: "xxxx5459."

It bears note that QR Codes have become ubiquitous in American commerce. *See e.g.,* Christine DesMarais, *Who's Scanning the Ubiquitous QR Code*, PC World Magazine, Aug. 13, 2011, *avail. at* www.pcworld.com/article/238028/who_s_scanning_the_ubiquitous_qr_code_.html; Don Edrington, *Scammers Using QR Codes to Access Private Files*, San Diego Union-Tribune, May 6, 2013, *avail. at* www.utsandiego.com/news/2013/May/06/don-edrington-computer-tutor-column/.

### III.  LEGAL ARGUMENT[2]

Since its passage in 1977, the Fair Debt Collection Practices Act ("FDCPA") has carried a short and exceptionally clear statement concerning what a debt collector may and may not place on an envelope that the collector puts through the mails.  15 U.S.C. § 1692f(8) prohibits a debt collector from:

> "using any language or symbol other than the debt collector's address, on any envelope when communicating with a consumer by the use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business."

Despite this exceptionally clear instruction, Convergent took it upon itself to place into the mails collection correspondence to Ms. Douglass (and to the putative Class) that displayed her financial account number in the glassine window of the envelope right above her name and address, and also a QR Code.  The QR Code, when scanned by a common app, reveals, *inter alia*, the consumer's account number and the balance claimed due.

---

[2] Convergent did not set forth a "Statement of Undisputed Facts" as provided in chamber's motion procedures. Accordingly, Douglass is not able to respond in a "fact-by-fact" fashion as the procedure contemplates. Fortunately, neither the Motion for Summary Judgment, nor this case, is heavily fact bound.

5

### A.     Purpose and Background of the FDCPA

In enacting the FDCPA, Congress found "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a) (Congressional findings and declaration of purpose); *Benner v. Bank of America*, 2013 WL 85913, *7 (E.D. Pa. Jan. 7, 2013). Congress intended the FDCPA to be enforced by debtors acting as private attorneys general, and specifically by the private class action mechanism. *Weiss v. Regal Collections*, 385 F.3d at 345 and n.13; *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006). "As remedial legislation, the FDCPA must be broadly construed in order to give full effect to these purposes." *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 148 (3d Cir. 2013); *accord Brown*, 464 F.3d at 454.

The FDCPA, and particularly § 1692f under consideration instantly, is a strict liability statute where the degree of a defendant's culpability may only be considered in computing damages. *Allen v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 & n.7 (3d Cir. 2011)("the characterization of the FDCPA as a strict liability statute is generally accepted"); *Benner*, 2013 WL 85913 *7-8.

The body of § 1692f(8) contains two carve-outs to the broad prohibition of language or symbols on an envelope: (1) the collector may use his address; and (2) the collector "may use his business name if such name does not indicate that he is in the debt collection business." There is no exception in the FDCPA that permits a collector to disclose a consumer's personal identifying information such as their account number or balance claimed due. This principle of construction is significant, because "where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." *TRW v. Andrews*, 534 U.S. 19, 28 (2001). Here, by placing extraneous

language on (or visible through the window of) its collection envelopes, Convergent violated the Act's prohibition. 15 U.S.C. § 1692f, f(8). Application of this Circuit's strict liability standard to § 1692f claims renders Convergent liable. *Allen*, 629 F.3d at 368. Summary judgment must be denied.

### B. Plain Language and Settled Principles of Statutory Construction

There is no factual dispute about what the challenged collection letter says. Convergent used numbers (the financial account number xxx5459) and symbols (the QR Code which yields the account number and balance due, *see supra*) visible through the window envelope. This data falls into neither statutory exception of § 1692f(8). Because this violates the Act's plain language, the Court need not and should not go further to attempt to divine legislative intent or examine legislative history. Indeed, resort to supposed legislative intent in the face of an unambiguous statute would contravene over a century of settled precedent in the law of statutory construction. *See Merchants Insurance v. Ritchie*, 72 U.S. 541 (1866)("it is quite possible that this effect of the Act … was not contemplated by Congress … but when terms are unambiguous we may not speculate on the probabilities of intention."); *Anderson v. Wilson*, 289 U.S. 20, 27 (1933)("we do not pause to consider whether a statute differently conceived and framed would yield results more consonant with fairness and reason. We take the statute as we find it."); *U.S. v. Caldwell*, 463 F. 590, 594 (3d Cir. 1972)(quoting *Anderson* at 27); *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561 (3d Cir. 2002)(applying plain language where there are "at least plausible policy reasons why Congress might have intended [the result].") It is more than "plausible" that Congress chose, in this consumer-protection statute, to create a bright-line rule to protect consumer privacy. After all, a bright-line rule benefits business as well by providing clear

guidance on matters as mundane but important as what to include on 8 million pieces of interstate mail.

Under Defendant's "benign language" scenario, decisions would be made by individual judges on an ad-hoc basis. The "best evidence of Congress' intent is what it says in the text of the statutes." *Fogleman*, 283 F.3d at 569. Adopting a *de facto* exemption for "benign language" would tend naturally to *restrict* the reach of this remedial Act. Such would be at odds with the requirement to interpret and apply the FDCPA liberally. *See Brown*, 464 F.3d at 454; *Caprio*, 709 F.3d at 148. It would also encourage an undesirable slippage in the respect due legislative acts. For example, the preceding section, 15 U.S.C. § 1692f(7) prohibits "communicating with a consumer regarding a debt by post card." Will the Courts now become accredited to re-write the legislation to *allow* post cards under the vague rubric of "absurd result" – so long as the post card does not mention debt collection?

In *Dutton v. Wolpoff & Abramson*, 5 F.3d 649 (3d Cir. 1993) a collector failed to include in its communication a disclosure required under the Act that the "debt collector is attempting to collect a debt and that any information obtained will be used for that purpose." 15 U.S.C. § 1692e(11). In *Dutton*, as in *Douglass* here, the collector argued absurdity, that "a literal interpretation of the statute is contrary to public policy" because it would be burdensome and at odds with congressional intent. The Court of Appeals rejected the "absurdity" defense, finding that "the law firm's quarrel about the burden this part of the statute places on it is with Congress," who chose to use a modifier "all". *Dutton*, 5 F.3d at 656-57.

In *Peter v. G.C. Services, L.P.*, 310 F.3d 344 (5th Cir. 2002) a collector mailed correspondence in an envelope which had a return address of "U.S. Department of Education,

P.O. Box 4144, Greenville, TX, 75403 Official Business Penalty for Private Use $300." The Court of Appeals found it unnecessary to reach any issue concerning "benign language" holding:

> "The defendant's use of the United States Department of Education's name and address on the envelope, as well as a marker that the envelope is not to be used for private communication violated the plain language of § 1692f(8). The name and address of the Department of Education and the penalty for private use language is language other than the debt collector's name and address."

The District Court had dismissed the case on the premise that a literal reading of the statute would create an alleged "absurdity" because it would prohibit placing even the address of the debtor or a stamp on the envelope. *Peter*, 310 F. 3d at 351. The Court of Appeals rejected that "absurdity" approach recognizing that the statutory text "use of the mails" includes "a statutory allowance for those items that are necessary for an envelope to move through the mails." Thus, "if § 1692f(8) is read as a whole, no absurd result ensues, meaning we need not inquire beyond the statutory text." *Id.* The collector invited the Court of Appeals to adopt a so-called "benign language" exception as several other district courts had done. The Court in *Peter* declined to reach the issue of whether § 1692f(8) implicitly includes an exemption for benign language since the defendant's reference to the Department of Education was certainly not benign. *Id.* at 351.

Adopting Convergent's argument would require the Court to rewrite Congress' chosen statutory language. This is evidenced by comparing Convergent's preferred reading with the actual statutory language. A debt collector violates § 1692f(8) by:

> Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

The <u>actual text</u> of the statute appears above. The text Convergent would have the Court adopt by judicial amendment is:

> Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may ~~use his business name~~ **place any language or symbol on an envelope** if ~~such name~~ **such language or symbol is benign or** does not indicate that he is in the debt collection business.

The Court need not and should not reach any asserted "benign language" exception because the use of a financial account number – a piece of regulated "personal identifying information" – is surely not benign nor is the information disclosed by the QR Code. *See infra*.

### C. The Waldron Decision

On March 13, 2013, Judge Diamond handed down the decision in *Waldron v. Professional Medical Management*, 2013 WL 978933 (E.D. Pa. Mar. 13, 2013). The facts and the legal claims in *Waldron* are in part similar, but not identical, to those raised here.[3]

*Waldron* also involved the use of a "QR Code." Indeed, the QR Code in both cases was created for both collection agencies by Dantom Systems, a large mail-house vendor in Michigan. The QR Code printout is in the same format, *i.e.*, the series that includes an alpha-numeric which includes the consumer's name and address, account number, and balance being sought to collect.

---

[3] Plaintiff's counsel instantly was also counsel for Mr. Waldron. The *Waldron* matter is on appeal to the Third Circuit at U.S.C.A. Docket No. 13-2044.

(*See* Deposition of Robert Flynn of Dantom Systems, 2/15/13, Exhibit "C" hereto, p. 24-25, 38-39: the letter shows a principal and total balance of $802.04; when scanned, the field comes up 802.04). Anne Carlson, Director of Support Services at Convergent testified that she had been advised by Dantom regarding the QR Code and the balance due being readable and that Convergent then directed that the balance due field (but not the account number) be removed. (*See* Deposition of Anne Carlson, 8/12/12, Exhibit "E" hereto, p. 47).

> "Q [to Carlson]: Earlier you spoke about a conversation with Lisa Burton and the removal of the balance due sum from what could be read off the QR Code; do you recall that?
> A: I recall a question regarding it, I don't recall a question being asked.
> Q: Okay, didn't you testify that you told her to have Dantom remove the balance due?
> A: Yes.
> D: Okay, did you tell Ms. Burton to have Dantom remove the account number?
> A: No.
> Q: Why not?
> [Objection to form]
> A: Because I didn't."

A key distinction between *Waldron* and *Douglass* is the allegation instantly that the presence of the financial account number assigned by Convergent to Douglass is visible in the window of the envelope. (SAC, Docket No. 29, ¶ 2, 14). This is distinct from the presence of the account number visible via QR scan. The issue of the account number itself visible through the glassine window was neither pled, nor discussed in the Opinion in *Waldron*. Thus, the issues that the Court in *Waldron* had with the QR Code are not present with respect to the account number, in the window, *e.g.*, that a scanner is necessary (*Waldron* at *4) or that the so-called embedded data is a "seemingly random series of letters and numbers." (*Waldron* at *5).

11

### The Evidence of Record Establishes the Information Disclosed is not Benign.

Plaintiff's expert, Evan Hendricks, is a recognized privacy expert. (*See* Hendricks' Declaration, Exhibit "F"). Mr. Hendricks opines that the presence of the account number, and the information readable through the QR Code violates existing conventions of privacy and is not innocuous. (Hendricks' decl. at ¶ 6). An account number constitutes "nonpublic personal information" under the Gramm-Leach-Bliley Act, 15 U.S.C. § 6809(4). *Id.* at ¶ 10-12.

Defendant Convergent retained its own expert, Kevin Barrows. Mr. Barrows' area of expertise is identity theft. Mr. Barrows candidly admitted that he would not recommend that clients place a customer's account number on the outside of their envelope. (Deposition of Barrows, 2/28/13, Exhibit "G" hereto, p. 92). An account number "can be" identifying information. *Id.* "It's unnecessary information and any unnecessary information, whether it's going to be used or not ... I would not recommend that it be placed on the outside of an envelope." (Barrows dep. p. 94-96).

> "Q: But if you were counseling a company, the company came to you and said we're mailing out 8 million pieces of mail a year to people we think owe us money, do you recommend we put their account number on the outside of the envelope, what would you tell them?
> [Objections]
> A: I would definitely not recommend they do that, no."

(Barrows dep. p. 96). Although there is no "benign language" exception in the statute, Convergent has not established that display of the consumer's account number through the glassine window, and inclusion of a readable QR Code is "benign" as a matter of law. One may reasonably infer that Defendant's expert would not be so emphatically reluctant to display language if it were truly benign or innocuous. Of course, at summary judgment, inferences are to be resolved in favor of the non-movant. *See Anderson v. Wachovia Mortgage*, 621 F.3d 261,

267 (3d Cir. 2010). Moreover, at summary judgment, the court does not weigh competing expert reports. *See NTP Marble, Inc. v. AAA Helenic Marble, Inc.*, 2012 WL 607975 *6 (E.D. Pa. Feb. 27, 2012). Defendant has not shown that the account number and balance is benign as a matter of law.

### D. Defendant's Cited Cases are Inapposite

At numbered paragraphs 4, 5 and 6 of its motion, Defendant cites several cases that it contends support a "benign language" exception.

Defendant's reliance on cases such as *Goswami v. Am. Collections Enter., Inc.*, 377 F.3d 488 (5th Cir. 2004) and *Strand v. Diversified Collections Serv. Inc.*, 380 F.3d 316 (8th Cir. 2004) is misplaced. Both of these cases ignore the plain language of Section 1692f(8) in favor of divining legislative history. These cases also focus on whether the envelope pertains to "debt collection." Here, the violation goes to protection of consumer privacy interests. (*See* Hendricks' decl., Exhibit "F"). Neither *Goswami* or *Strand* sanctioned placing the account number or balance due in a visible place. Moreover, *Goswami* does not, as Defendant asserts, create a rule that a symbol must "announce a delinquency". (Def. br. at ¶ 7). *Goswami* merely held that an envelope that bore a blue bar with the phrase "Priority Letter" would not violate § 1692f(8).

The use of "transmittal" on an envelope was held to be innocuous in *Lindbergh v. Transworld Sys., Inc.*, 846 F.Supp. 175, 180 and n. 27 (D. Conn. 1994). The use of "Personal and Confidential" and "Address Correction Requested" was held innocuous in *Masuda v. Thomas Richards & Co.*, 759 F.Supp. 1456, 1466 (C.D. Calif. 1991). (*See* Def. br. at 7).

*Johnson v. NCB Collection Services*, 799 F.Supp. 1298 (D. Conn. 1992) (Def. br. at ¶ 6-7) is distinguishable. *Johnson* is not clear on what the "encoding" on the envelope entailed or

revealed, stating only that "it is hardly apparent that any individual unenlightened in NCB's encoding process could have deciphered Johnson's debt from the printed series of numbers and letters." *Id.* at 1305. There does not appear to have been an assertion that the account number was readable. Here, there is evidence that the QR Code reveals the account number and the amount claimed due, and the account number is displayed through the window without even scanning the QR Code. Moreover, this holding from *Johnson* is no more than *dictum* because the Court dismissed the claim on the basis that the consumer made the choice to use this envelope. ("Johnson could have easily substituted his own unmarked envelope for his return correspondence with NCB.") *Id.* If anything, *Johnson* suggests that the encoded envelope could indeed cause damage to reputation, but Mr. Johnson had made the voluntary choice to use it. *Compare Davis v. Baron's Creditor's Service*, 2001 WL 1491503 (N.D. Ill. Nov. 20, 2001)(whether name "Creditors Service" on an envelope violates § 1692f(8) held a jury question).

Finally, in its motion, Convergent conflates the liability determination with a showing of actual harm to the Plaintiff. In its numbered paragraphs 8 through 15, Defendant cites to portions of Plaintiff's deposition testimony which, it contends, demonstrate that Plaintiff did not suffer actual harm and was not personally embarrassed. But this is not a suit for actual damages under § 1692k(a)(1). Rather, this is a class action solely for statutory damages under § 1692k(a)(2)(B). The law is settled in this circuit "plaintiffs may collect statutory damages under the FDCPA even if there are no actual damages." *Hamid v. Stock & Grimes, LLP*, 876 F.Supp.2d 500, 502 (E.D. Pa. 2012) *citing Weiss v. Regal Collections*, 385 F.3d 337, 340 & n.5 (3d Cir. 2004). The focus is entirely on the conduct of the Defendant and what level of statutory damages the factfinder should find appropriate upon consideration of the § 1692k(b)(2).

## IV.  CONCLUSION

Defendant's Motion for Summary Judgment must be denied.

Respectfully submitted:

Date: 5/15/13

*/s/ Cary L. Flitter*
CARY L. FLITTER
THEODORE E. LORENZ
ANDREW M. MILZ
Attorneys for Plaintiffs

FLITTER LORENZ, P.C.
450 N. Narberth Avenue, Suite 101
Narberth, PA 19072
(610) 822-0782

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELISA BROOKS-CUNNINGHAM<br><br>and<br><br>COURTNEY DOUGLASS<br>*on behalf of themselves and all others similarly situated,*<br>             Plaintiffs<br><br>vs.<br><br>ER SOLUTIONS, INC.<br>             Defendant | CIVIL ACTION<br><br><br>NO. 12-1524(JHS)<br><br><br><br><br><br><br><br>CLASS ACTION |

## CERTIFICATE OF SERVICE

I, CARY L. FLITTER, do hereby certify that a copy of the foregoing Plaintiff's Opposition to Defendant's Motion for Summary Judgment was served upon the below listed counsel by electronic filing:

Richard Perr, Esquire
FINEMAN, KREKSTEIN & HARRIS, P.C.
Mellon Bank Center
1735 Market Street, Suite 600
Philadelphia, PA 19103

Ed Walton, Esquire
BUSH & RAMIREZ, LLC
5615 Kirby Drive, Suite 900
Houston, TX 77005

**Attorneys for Defendant**

Date: 5/15/2013

                                                           /s/ *Cary L. Flitter*
                                                           Cary L. Flitter