IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COURTNEY DOUGLASS,<br><br>              Plaintiff,<br><br>   v.<br><br>CONVERGENT OUTSOURCING,<br><br>              Defendant. | CIVIL ACTION<br>NO. 12-1524 |

## OPINION

**Slomsky, J.**                                                                                                                                                                                       **August 6, 2013**

### I.     INTRODUCTION

The Fair Debt Collection Practices Act (the "FDCPA") prohibits debt collectors from using any "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Plaintiff Courtney Douglass, a resident of Pottstown, Pennsylvania, was sent a debt collection letter by Defendant Convergent Outsourcing.[1] Plaintiff contends that the envelope which contained the debt collection letter violates a section of the FDCPA that bars debt collectors from:

> Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

15 U.S.C. § 1692f(8).

Defendant has filed a Motion for Summary Judgment, arguing that Plaintiff's claim should be dismissed because the language on the envelope is "benign," and therefore not in

---

[1] The Complaint was filed against ER Solutions, Inc. ER Solutions is now known as Convergent Outsourcing. (Doc. No. 29 at 2.)

1

violation of § 1692f(8). For reasons that follow, Defendant's Motion for Summary Judgment will be granted.

## II.   BACKGROUND

On or about May 16, 2011, Defendant sent a letter to Plaintiff attempting to collect payment on a debt of $802.04 that Plaintiff had incurred from T-Mobile USA for cell phone service. (Doc. No. 29 at 2.) The envelope containing the letter had a clear plastic window. (Id. at 2–3.) Through the window, the following were visible: (1) Plaintiff's name and address; (2) an internal account number Defendant used to identify Plaintiff ("7630549"); and (3) a Quick Response ("QR") code.[2] (Doc. No. 52 at 4–5.) The QR code contains encoded information, and can be "scanned" by certain devices, such as a smartphone, to decode the information and reveal its contents. (Id. at 5.) The QR code on Plaintiff's envelope, if scanned by such a device, would reveal the following information:

> ATERSO01,#K#02R-7630549, Courtney Douglass, <u>228 King St Apt 3</u>, Pottstown, PA, <u>194645515280</u>,R241,802.04

(Doc. No. 36 at 1 (underline in original).) In the string of numbers, "7630549" is Plaintiff's account number with Convergent Outsourcing, and "802.04" represents the debt she owed to T-Mobile. (Doc. No. 36 at 6.) Plaintiff's address is 228 King St., Apt. 3, Pottstown, PA 19464. (Doc. No. 52 at 4.) Defendant uses the QR code to efficiently sort mail that is returned to the sender. (Mot. Hr'g Tr. at 11:18–12:7, May 29, 2013.)

On March 26, 2012, Plaintiff filed the Complaint (Doc. No. 1), alleging that Defendant has violated the literal meaning of 15 U.S.C. § 1692f(8) by including the QR code and account number in a location visible through the clear plastic window of the envelope. On April 27, 2012, Plaintiff amended the Complaint. (Doc. No. 2.) On November 9, 2012, the Complaint

---

[2] For a visual example of a QR code, see <u>Waldron v. Professional Medical Management</u>, No. 12-1863, 2013 WL 978933, at *1 (E.D. Pa. Mar. 13, 2013).

was amended a second time. (Doc. No. 29.) Defendant filed its Answer to the Second Amended Complaint on November 26, 2012. (Doc. No. 32.)

On November 30, 2012, Defendant filed the Motion for Summary Judgment, arguing that the information visible through the window of the envelope is subject to a "benign language" exception, and therefore including it on the face of the envelope does not violate § 1692f. (Doc. No. 36.) On May 15, 2013, Plaintiff filed a Response in Opposition to the Motion[3] (Doc. No. 52), and on May 21, 2013, Defendant filed a Reply (Doc. No. 54). On May 29, 2013, the Court held a hearing on the Motion.[4] The Motion is now ripe for disposition.

### III.    STANDARD OF REVIEW

Granting summary judgment is an extraordinary remedy. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reaching this decision, the court must determine "whether the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and whether the moving party is therefore entitled to judgment as a matter of law." Macfarlan v. Ivy Hill SNF, LLC., 675 F.3d 266, 271 (3d Cir. 2012) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). A disputed issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477

---

[3] Defendant filed the Motion for Summary Judgment on November 30, 2012, and an Amended Scheduling Order entered by the Court on January 11, 2013 (Doc. No. 47) allowed Plaintiff to respond by May 15, 2013.

[4] On June 11, 2013, Plaintiff filed a Sur-Reply in Further Opposition to the Motion. (Doc. No. 60.) On June 17, 2013 Defendant filed a Response to the Sur-Reply in Further Support of the Motion. (Doc. No. 61.)

U.S. 242, 248 (1986)).  A factual dispute is "material" only if it might affect the outcome of the suit under governing law.  Doe v. Luzerne Cnty., 660 F.3d 169, 175 (3d Cir. 2011) (citing Gray v. York Papers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992)).  The Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried.  Anderson, 477 U.S. at 247-49.

In deciding a motion for summary judgment, the Court must view the evidence, and make all reasonable inferences from the evidence, in the light most favorable to the non-moving party.  Macfarlan, 675 F.3d at 271; Bouriez v. Carnegie Mellon Univ., 585 F.3d 765, 770 (3d Cir. 2009).  Whenever a factual issue arises which cannot be resolved without a credibility determination, at this stage the Court must credit the non-moving party's evidence over that presented by the moving party.  Anderson, 477 U.S. at 255.  If there is no factual issue and if only one reasonable conclusion could arise from the record regarding the potential outcome under the governing law, summary judgment must be awarded in favor of the moving party.  Id. at 250.

The nonmoving party may not resist a properly filed motion for summary judgment by relying solely on the unsupported conclusory allegations contained in pleadings, but rather must go beyond the pleadings and affidavits and designate specific facts showing that there is a genuine issue for trial.  Liberty Lobby, 477 U.S. at 248.  In ruling on Defendant's Motion for Summary Judgment, a mere scintilla of evidence in support of Plaintiff's position is insufficient.  Id. at 252.  Enough evidence must exist such that a jury could reasonably find for Plaintiff.  Id.  Plaintiff cannot merely rely upon assertions or speculation.  Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985), cert. denied, 474 U.S. 1010 (1985).  If the evidence is merely colorable or is not sufficiently probative, summary judgment may be granted.  Bouriez, 585 F.3d at 771.

4

IV.     ANALYSIS

    A.     The "Benign Language" Exception

The FDCPA bars debt collectors from using any "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. In furtherance of this objective, debt collectors are prohibited from:

> Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

15 U.S.C. § 1692f(8).

Every court given the opportunity has created a "benign language" exception to this subsection, under which a defendant only violates § 1692f(8) if the markings on the envelope "signal that it is a debt collection letter, [or] tend to humiliate, threaten, or manipulate [the] debtor[]." Goswami v. Am. Collections Enters., Inc., 377 F.3d 488, 493 (5th Cir. 2004); see Waldron v. Prof'l Medical Mgmt., No. 12-1863, 2013 WL 978933, at *3 (E.D. Pa. Mar. 13, 2013);[5] see also Strand v. Diversified Collection Serv., Inc., 380 F.3d 316, 318–19 (8th Cir. 2004); Lindberg v. Transworld Sys., 846 F. Supp. 175, 180 (D. Conn. 1994); Masuda v. Thomas Richards & Co., 759 F. Supp. 1456, 1466 (C.D. Cal. 1991).

Plaintiff urges this Court to eschew the "benign language" exception, and construe § 1692f(8) literally to mean that no language or symbols other than what is explicitly permitted by the statute can appear on the envelope. In support of her position, Plaintiff cites TRW v. Andrews, 534 U.S. 19, 28 (2001), where the U.S. Supreme Court reasoned that "where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to

---

[5] The facts of Waldron are almost identical to the facts of this case. The only difference is that here, the QR code and Plaintiff's account number are visible through the envelope window, whereas only the QR code was visible through the envelope window in Waldron. Plaintiff's counsel in this case also represented the plaintiff in Waldron.

5

be implied, <u>in the absence of evidence of a contrary legislative intent</u>." (Doc. No. 52 at 7 (emphasis added).) Because 1692f(8) explicitly identifies one exception to the general rule barring extraneous markings — "a debt collector may use his business name if such name does not indicate that he is in the debt collection business" — Plaintiff contends that this Court should refrain from engrafting any other exceptions onto the statute. (Doc. No. 52 at 7 (citing <u>TRW</u>, 534 U.S. at 28).)

While Plaintiff's argument rests upon the important principle that courts should primarily look to the plain meaning of the text when engaging in statutory interpretation, this Court is not persuaded to adopt Plaintiff's position here. As the courts that have adopted the "benign language" exception point out, there is strong evidence of "a contrary legislative intent" to only bar practices by debt collectors that "signal that it is a debt collection letter, [or] tend to humiliate, threaten, or manipulate [the] debtor[]." <u>Goswami</u>, 377 F.3d at 493. Moreover, a court can also consider the overall "object and policy" of the statute. <u>Disabled in Action of Pa. v. Se. Pa. Transp. Auth.</u>, 539 F.3d 199, 210 (3d Cir. 2008) (citation and internal quotation marks omitted). Indeed, "[l]ooking beyond the naked text for guidance is perfectly proper when the result it apparently decrees is difficult to fathom or where it seems inconsistent with Congress' intention, since the plain-meaning rule is 'rather an axiom of experience than a rule of law, and does not preclude consideration of persuasive evidence if it exists.'" <u>Pub. Citizen v. U.S. Dep't of Justice</u>, 491 U.S. 440, 455 (1989) (quoting <u>Boston Sand & Gravel Co. v. United States</u>, 278 U.S. 41, 48 (1928)).

There is strong, persuasive evidence that the strict interpretation Plaintiff urges the Court to adopt would defeat the purpose of 15 U.S.C. § 1692f(8). The Senate Report on the FDCPA states that the purpose of the bill is to "protect consumers from a host of unfair, harassing, and

deceptive debt collection practices <u>without imposing unnecessary restrictions on ethical debt collectors</u>." S. Rep. No. 95-382, at 1 (1977) (emphasis added).  Federal Trade Commission Staff Commentary on the Act states that "[t]he legislative purpose was to prohibit a debt collector from using symbols or language on envelopes that would reveal that the contents pertain to debt collection — <u>not to totally bar the use of harmless words or symbols on an envelope</u>." Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097-02, 50099 (Dec. 13, 1988) (emphasis added).

Refusing to adopt the exception would cut against Congress' purpose of protecting debtors from harassment and embarrassment while not imposing unnecessary restrictions on ethical debt collectors.  Therefore, this Court will follow all other courts that have confronted this question, and adopt the "benign language" exception.  See <u>Waldron</u>, 2013 WL 978933, at *3.

### B. Whether the "Benign Language" Exception Applies is a Question of Law

The <u>Waldron</u> decision illustrates that every court to address whether the "benign language" exception applies has held it to be a question of law for the court to decide, not a question of fact for the jury.  <u>Waldron</u>, 2013 WL 978933, at *3; <u>see</u> <u>Strand</u>, 380 F.3d at 319 ("As a matter of law . . . we conclude the language and symbols were benign because they did not, individually or collectively, reveal the source or purpose of the enclosed letters.").  The Court agrees with this persuasive authority.  The Court therefore must decide whether the language and symbol Plaintiff complains of are benign as a matter of law.  Fed. R. Civ. P. 56(a).

### C. The Language, Numbers, and Symbols are Benign

Plaintiff argues that even if this Court adopts the "benign language" exception, it should still prevail because the information visible through the plastic window of the envelope is not

benign.  (Doc. No. 52 at 13–14.)  Two pieces of information form the crux of Plaintiff's Complaint: (1) the account number that is revealed through the plastic window of the envelope when the QR code is scanned; and (2) the amount due that Plaintiff alleges is revealed by scanning the QR code.[6]

### 1. The Account Number

Plaintiff contends that the visibility of the account number is not benign because it is "nonpublic personal information" and its disclosure could result in an increased risk of identity theft.  (Doc. No. 52 at 13.)  In support of this position, Plaintiff characterizes the account number as a "financial account number," and argues that the privacy standards laid out in the Gramm-Leach-Bliley Privacy Act, 15 U.S.C. § 6801 et seq., provide a guide that this Court should follow in determining whether the disclosure of the account number is benign.  (Doc. No. 60 at 1-2.)

Here, however, Plaintiff alleges a claim under the FDCPA, not the Gramm-Leach-Bliley Privacy Act.  For the purposes of this case, the standards of the FDCPA, and the judicial interpretation of it, provide the appropriate guidance.  The purpose of the section of the FDCPA at issue here is not to prevent identity theft; rather, it is to put an end to a different kind of mischief — namely, the use of "unfair or unconscionable" practices by debt collectors that: (1) identify the communication as a debt collection letter; or (2) "tend to humiliate, threaten, or

---

[6] At the hearing on this Motion, Defendant raised a question about whether the information contained in the QR code can even be considered as appearing "on the face" of the envelope, because federal law makes it illegal for someone to scan a QR code on an envelope. (Mot. Hr'g Tr. at 4:22–25.)  For this reason, Defendant contends that the QR code should not be viewed as appearing "on the face" of the envelope.

It is indeed illegal for someone to take a "letter . . . before it has been delivered to the person to whom it was directed, with design to . . . pry into the business or secrets of another."  18 U.S.C. § 1702.  However, because the Court concludes in this Opinion that the information revealed in the QR code is benign, the Court need not reach the question of whether it appears "on the face" of the envelope.

manipulate" the debtor.  15 U.S.C. § 1692f; Goswami, 377 F.3d at 493.  The exposure of the account number on the face of an envelope is not indicative of either unlawful practice.

In Marx v. General Revenue Corp., the Tenth Circuit held that an account number on a facsimile sent to a debtor's employer could not be "reasonably construed to imply a debt."  668 F.3d 1174, 1177 (10th Cir. 2011).  It characterized the account number as "a jumble of numbers, designed for internal identification purposes, the functional equivalent of a bar code."[7]  Id. at 1183.

In Waldron, a case similar to the instant case, the court held that an account number revealed by scanning a QR code through an envelope window did not identify the communication as a debt collection letter.  Waldron, 2013 WL 978933, at *6.  The court reasoned that the "'jumble' of letters and numbers that comprise Plaintiff's account number . . . reveals nothing to a person without the means to decipher it."  Id. (quoting Marx, 668 F.3d at 1183).  Therefore, since the "gravamen of a § 1692f(8) violation is that the challenged symbol clearly refers to a debt," and there is "no such reference" here, the presence of the account number does not violate the statute.  Id. at *6 (quoting Marx, 668 F.3d at 1183).

The Court finds the reasoning of these two cases persuasive.  The mere presence of an account number does not show that the communication is related to a debt collection.  Marx, 668 F.3d at 1177; Waldron, 2013 WL 978933, at *5.  It also could not reasonably be said to "humiliate, threaten, or manipulate" the debtor.  Goswami, 377 F.3d at 493.  As such, the

---

[7] At issue in Marx was a different provision of the FDCPA from the one in this case.  The Marx court interpreted 15 U.S.C. § 1692c(b), which provides that a "debt collector may not communicate, in connection with a collection of any debt, with a person other than the consumer."  Nevertheless, the reasoning of Marx is applicable to this case.

9

presence of the account number, either in the QR code or on the face of the envelope, does not violate § 1692f(8).[8]

Moreover, even if the Court were to adopt identity theft as a factor in the analysis, Plaintiff has not established that the risk of identity theft is anything more than mere "assertion[] or speculation." Gans, 762 F.2d at 341. In support of her contention, Plaintiff submitted a declaration by Evan Hendricks, an expert in the field of identity theft. (Doc. No. 52-6.) Hendricks, however, does not explain how the disclosure of this account number could lead to identity theft. He merely explains that protecting sensitive personal information — such as financial account numbers — is important, that there are a number of laws that protect this kind of information, and that identity thieves can be "persistent" and "industrious." (Doc. No. 52-6 at 2–4.) The Court is not persuaded that Hendricks's declaration advances Plaintiff's claim. The Court is more convinced by Defendant's expert, Kevin Barrows, who stated in his report that the account number is "an internal file number for a collection agency which cannot reasonably lead to identity theft." (Doc. No. 36- 2 at 4.)

---

[8] At the hearing on this Motion, Plaintiff's counsel argued that this case is different from Waldron because here, unlike in Waldron, the account number appears on the face of the envelope. (Mot. Hr'g Tr. 24:5–25:9.) The Court disagrees.

First, the Waldron court assumed for the sake of argument that "there is no material difference between displaying the [QR code] and the embedded data itself on the collection envelope's face." Waldron, 2013 WL 978933, at *5. It still held that the "embedded data is a seemingly random series of letters and numbers that only Defendant can decipher [and] its inclusion on the envelope's face thus does not violate the [FDCPA]." Id.

Second, although the Marx analysis focused on a different subsection of the FDCPA, the reasoning is equally applicable here. In that case, the account number did appear on the face of the communication sent to the plaintiff's workplace. Marx, 668 F.3d at 1176. The court held that the mere presence of the account number on the communication did not "indicate to the recipient that the message relates to the collection of a debt." Id. at 1177. Therefore, its exposure did not violate the FDCPA.

The internal account number used by Defendant is not linked to any assets held by Plaintiff — only the debt she owes to T-Mobile.  It is therefore significantly different from a credit card number that a person can charge against, or debit card number linked to a checking account containing accessible funds.  Rather, the account number here is the "functional equivalent of a bar code."  Marx, 668 F.3d at 1183.  Hendricks's declaration at best provides speculation that the disclosure of this number could lead to Plaintiff's harm.  See Gans, 762 F.2d at 341.  Therefore, even if identity theft was a factor, Plaintiff would not be able to survive a summary judgment motion.

In sum, whether a symbol could lead to identity theft is not the correct question.  Rather, the Court must determine whether the presence of the account number on the envelope "signal[s] that it is a debt collection letter, [or] tend[s] to humiliate, threaten, or manipulate" the Plaintiff.  Goswami, 377 F.3d at 493.  The Court concludes that it does neither of these things as a matter of law.  Therefore, since exposure of this account number on the envelope and through the QR code is benign, § 1692f(8) is not violated.

    **2.**    **The Amount Due**

Plaintiff also argues that the amount she owes to the debt collector is exposed when the QR code is scanned, and that this violates the FDCPA.  Although revealing to the public the amount that is owed could violate the FDCPA, as it might "tend to humiliate, threaten, or manipulate" the debtor, the Court is not convinced that the amount due has been revealed in this case.

When scanned, the QR code reveals the following:

ATERSO01,#K#02R-7630549, Courtney Douglass, 228 King St Apt 3, Pottstown, PA, 194645515280,R241,802.04

(Doc. No. 36 at 1 (underline in original).) At issue is the "802.04" that ends this string of letters, numbers, and symbols. Plaintiff's outstanding debt was $802.04. (Doc No. 52 at 5.) Plaintiff argues that this figure is exposed when scanning is conducted, and this revelation violates the FDCPA.

The same issue was before the court in Waldron. That court noted that it has been "uniformly held that the gravamen of a 1692f(8) violation is that the challenged symbol clearly refers to a debt." Waldron, 2013 WL 978933, at *6. To any observer not familiar with Defendant's encoding practices, the embedded data is "a seemingly random series of letters and numbers." Id. at *5. Accordingly, "[n]o reasonable fact finder could determine that the final five digits of this incomprehensible series represent a sum of money Plaintiff owes to a third party." Id.

The Court agrees with the reasoning of Waldron. Since the "random series of letters and numbers" revealed through the QR code does not "clearly refer to a debt," or "tend to humiliate, threaten, or manipulate" Plaintiff, Defendant has not violated the FDCPA. Goswami, 377 F.3d at 493; Waldron, 2013 WL 978933, at *6.

**V.    CONCLUSION**

Defendant's Motion for Summary Judgment will be granted. Judgment will be entered in favor of Defendant. An appropriate Order follows.