IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COURTNEY DOUGLASS<br>*on behalf of herself and all others similarly situated,* <br> Plaintiff <br><br> vs. <br><br> CONVERGENT OUTSOURCING, f/k/a/ ER SOLUTIONS, INC. <br> Defendant | NO. 12-1524(JHS) <br><br><br><br><br> CLASS ACTION |

**PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS SETTLEMENT AND PRELIMINARY DETERMINATION ON
CLASS CERTIFICATION (UNCONTESTED)**

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT THEREOF**

Dated: 2/27/15

**CARY L. FLITTER
THEODORE E. LORENZ
ANDREW M. MILZ**

**FLITTER LORENZ, P.C.**
450 N. Narberth Avenue, Suite 101
Narberth, PA 19072
(610) 822-0782

**SARAELLEN HUTCHISON
LAW OFFICE OF SARAELLEN
HUTCHISON, PLLC**
505 W. Riverside
Suite 521
Spokane, WA 99201
(509) 252-1899

**Attorneys for Plaintiff and the Class**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COURTNEY DOUGLASS<br>*on behalf of herself and all others similarly situated,*<br><br>                Plaintiff<br><br>vs.<br><br>CONVERGENT OUTSOURCING, f/k/a/<br>ER SOLUTIONS, INC.<br>                Defendant | NO. 12-1524(JHS)<br><br><br><br><br><br>CLASS ACTION |

## PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND PRELIMINARY DETERMINATION ON CLASS CERTIFICATION (UNCONTESTED)

Plaintiff, Courtney Douglass, moves the Court, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for preliminary approval of a Class Action Settlement.

1.      Plaintiff Courtney Douglass brings this case as a class action against Defendant Convergent Outsourcing, Inc. f/k/a ER Solutions, Inc. ("Defendant" or "Convergent") for violations of the Fair Debt Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. § 1692 et seq.

2.      Plaintiff has averred that Defendant routinely sent out collection communications where the consumer's unique account number was visible through the window of the envelope in violation of the FDCPA, 15 U.S.C. § 1692f(8). A copy of the challenged collection notice is appended hereto as Exhibit "1." Defendant has denied the allegations. The Court of Appeals has written on the issue. *See Douglass v. Convergent Outsourcing,* 765 F.3d 299 (3d Cir. 2014).

3.      The parties have now reached a Settlement Agreement, subject to approval of this Court. The Settlement Agreement is attached hereto as Exhibit "2."

4.      Convergent represents there are approximately 2504 Class Members." (Id. at ¶ 1D).

5.      Plaintiff now seeks preliminary approval of the Settlement Agreement and asks that

the Court make a preliminary determination on class certification.  The Class is defined as follows:

> All persons with addresses within Montgomery County, Pennsylvania, who
> were sent one or more letter(s) from ER Solutions, Inc. attempting to collect a
> consumer debt allegedly owed to T-Mobile, which letter bore an account
> number that was visible through the window of the envelope; where the letter(s)
> bears a send date between March 26, 2011 and November 9, 2012.

(Exhibit "2" at ¶ 1D).

6.      The Settlement Agreement is fair, reasonable, and in the best interest of the class

and provides, *inter alia*, the following relief:

(a) Defendant will make a classwide settlement payment in the amount of
$250,400.00 to be paid in $100 (net) checks to each Class Member who does
not opt-out and to whom the Class Notice was not returned as undeliverable;

(b) Defendant will pay the costs of Notice and administration of the settlement
(Exhibit "2" at ¶ 6);

(c) Notice of the class settlement will be mailed to the class of 2504 individuals
who were mailed the challenged letter during the Class Period;

(d) Defendant will pay Plaintiff Courtney Douglass $1,000.00 for her individual
claims under the FDCPA and a $2,500.00 service award for her services as
Class Representative;

(e) Defendant will pay approved Class Counsel fees and expenses of up to
$295,000.00 and $20,000.00 respectively;

(f) Plaintiff and the Class will release Defendant from the claims involving the
collection envelope as set forth in the Settlement Agreement. (Exhibit "2" ¶1 E
& F).

(*See* Settlement Agreement, Exhibit "2" hereto).

7.      All requirements for class certification under Rule 23 of the Federal Rules of Civil Procedure are satisfied here.

8.      The Class is so numerous that joinder of all members is impractical. Defendant has attested to 2504 putative Class Members and will provide a list with the names and last known addresses upon preliminary approval.

9.      There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members. The principal common issue is whether disclosure by Defendant of the consumers' account numbers through the window of their collection envelopes violates the FDCPA, 15 U.S.C. § 1692f(8).

10.     Ms. Douglass' claim is typical of the claims of the members of the Class. All of the claims are based on the same factual and legal theories, *i.e.* -- each Class Member received the same form of collection communication with the account number visible through the glassine window of the envelope.

11.     Plaintiff will fairly and adequately protect the interests of the Class. She is committed to vigorously litigating this matter and has retained counsel experienced in prosecuting consumer class actions. (*See* Exhibits "10" and "11", Certifications of Cary L. Flitter and Andrew M. Milz filed herewith).

12.     Pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, a class action is a superior method for the fair and efficient adjudication of this controversy in that:

a.      Congress specifically contemplated FDCPA class actions as a principal means of enforcing the statute. 15 U.S.C. § 1692k(a)(2)(B).

b.     The interest of Class Members in individually prosecuting separate claims against Defendant is small because the maximum amount of statutory damages in an individual action is $1,000.00. 15 U.S.C. § 1692k(a).

c.     Management of this compact, one-county Class does not present any difficulties that would impede certification.

13.     Pursuant to Fed. R. Civ. P. 23(e)(4), Plaintiff proposes a Notice of Class Action Settlement in the form attached as Exhibit "4" hereto which affords Class Members the opportunity to request exclusion and informs Class Members of their right to object to the Class Action Settlement.

14.     As set forth in the attached Memorandum and Certifications of Counsel, which are incorporated herein, the proposed settlement was reached after arms-length negotiations, is eminently fair, reasonable and in the best interests of the Class, and settlement is recommended by Class Counsel.

WHEREFORE, for the reasons set forth more fully in the within Memorandum of Law, attached Certifications, and for good cause shown, Plaintiff submits that this settlement is fair, reasonable and adequate, reached after substantial litigation and protracted arms-length

negotiation, and is in the best interest of the Class. Preliminary approval should be granted to permit Notice to issue to the Class. Defendant consents to the relief sought herein.

Date: 2/27/15

/s/ Cary L. Flitter
CARY L. FLITTER
THEODORE E. LORENZ
ANDREW M. MILZ

FLITTER LORENZ, P.C.
450 N. Narberth Avenue, Suite 101
Narberth, PA 19072
(610) 822-0782

SARAELLEN HUTCHISON
LAW OFFICE OF SARAELLEN
HUTCHISON, PLLC
505 W. Riverside
Suite 521
Spokane, WA 99201
(509) 252-1899

**Attorneys for Plaintiff and the Class**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COURTNEY DOUGLASS<br>*on behalf of herself and all others similarly*<br>*situated,*<br><div align="center">Plaintiff</div><br>vs.<br><br>CONVERGENT OUTSOURCING, f/k/a/<br>ER SOLUTIONS, INC.<br><div align="center">Defendant</div> | NO. 12-1524(JHS)<br><br><br><br><br><br><br>CLASS ACTION |

<u>**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION**</u>
<u>**FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND PRELIMINARY**</u>
<u>**DETERMINATION ON CLASS CERTIFICATION (UNCONTESTED)**</u>

## I.     <u>INTRODUCTION</u>

Plaintiff, Courtney Douglass, moves the Court pursuant to Fed. R. Civ. P. 23 for preliminary approval of a Class Settlement reached in this matter involving alleged violations of the Fair Debt Collection Practices Act ("FDCPA" or "Act"), 15 U.S.C. § 1692, et seq. Plaintiff's claims arise out of the form collection communication sent by Defendant Convergent Outsourcing, Inc., f/k/a ER Solutions, Inc. ("Defendant" or "Convergent") which displayed the consumers' unique account number through the glassine window of the collection envelope. The challenged collection letter is attached hereto as Exhibit "1".

The parties have now reached a class settlement, subject to approval of this Court. The settlement was reached after nearly three years of litigation, an appeal, and extensive arms-length negotiations between the parties. The settlement terms are fair, reasonable and adequate and in the best interest of the Class. Defendant shall pay: (1) a classwide settlement payment in the aggregate amount of $250,400.00 to be divided in shares of $100.00 for each of the Class Members to whom the Class Notice was not returned as undeliverable and who choose to remain in the

Class; (2) the sum of $1,000.00 to Plaintiff Courtney Douglass for her individual claims (as provided by the Act) and $2,500.00 for her services as a Class Representative; and (3) reasonable Class Counsel fees capped at $295,000.00 and litigation costs up to $20,000.00 subject to Court approval. The complete terms of the Settlement Agreement are set forth in the attached Class Action Settlement Agreement and Release (hereinafter "Settlement Agreement") attached as Exhibit "2" hereto and discussed at length below.

The relief sought in this Motion is uncontested by Defendant, who joins in the request for preliminary approval. A copy of the proposed Order for Preliminary Approval is separately filed herewith as Exhibit "3". The proposed Order for Preliminary Approval establishes certain dates and the method for mailing notice to the Class, the procedure and timing for administration and filing of objections, if any, to the settlement, or requests for exclusion by members of the Class. The proposed Class Notice to the members of the Class is filed herewith as Exhibit "4".

For the reasons set forth more fully herein, Plaintiff submits that all the requirements of Rule 23 are met, that preliminary approval of the settlement should be granted, and notice permitted to issue to the Class.

## II.   NATURE OF THE CASE

### A.   Factual and Procedural Background

Plaintiff, Courtney Douglass brings this case as a Class Action against Convergent Outsourcing, Inc. f/k/a ER Solutions, Inc. ("Convergent" or "Defendant"). Douglass sued to redress Defendant's violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. (hereinafter "FDCPA"), alleging that Defendant debt collector violated the provision of the FDCPA prohibiting a collector from:

> "Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or

telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business."

15 U.S.C. § 1692f(8).

The matter was commenced by the filing of a Complaint on March 26, 2012. (*See* Doc. No. 1).[1] The Complaint was amended twice; first to assert class allegations, and then to redefine the contours of the Class and to allow Courtney Douglass to act as the sole Plaintiff and Class Representative. (*See* Doc. Nos. 2 & 29). Plaintiff's Second Amended Complaint ("SAC") was filed November 9, 2012. (Doc. No. 29).

The SAC alleges that Convergent Outsourcing (which was formerly known as ER Solutions, Inc.) sent a collection dun to Ms. Douglass on May 16, 2011. The letter was an effort to collect on a consumer debt, *i.e.*, a bill claimed due to T-Mobile USA for cellular phone service. The May 2011 letter was sent to Douglass in a window envelope. Through the window of the envelope, there is visible the account number that Convergent assigned to Douglass for collection of the debt claimed due. A copy of the May 16, 2011 collection letter is Exhibit "1" hereto, and the top portion of the letter is reproduced here (save partial redaction of the account number per Fed. R. Civ. P. 5.2):

---

[1] The initial Complaint was filed by Elisa Brooks-Cunningham. The originally named Defendant was ER Solutions, Inc. ER Solutions changed its name to Convergent Outsourcing, and the Complaint was amended to reflect the name change.



ATERSO01
PO Box 1022
Wixom MI 48393-1022
CHANGE SERVICE REQUESTED

**ERS**olutions, *Inc.*

ER Solutions, Inc. 800 SW 39th St.
PO Box 9004 -Renton, WA 98057
Mon-Fri 7AM-7PM PST
Date: 05/16/2011
Creditor: T-Mobile
Client Account #:
ERS Account #: ████5459

5459

Courtney Douglass
228 King St Apt 3
Pottstown PA 19464-5515

Principal:        $ 802.04
Total Balance:    $ 802.04

(R. 99).

According to Lisa Burton, Client Service Manager at Convergent, Exhibit "1" (reproduced in part above) is a form letter that Convergent calls an "R241 letter." (Exhibit "5", Burton depo. dated Jan. 30, 2013 at pp. 41-42). The "R241" reference appears just to the right of the account number, immediately above the consumer's name and address. Convergent uses a mail vendor called RevSpring (formerly Dantom Systems) to print and mail the form letter to consumer debtors. (*Id.*). The R241 is mailed in a window envelope, through which the recipient's account number (here "xxxx5459" for Courtney Douglass) is visible above the recipient's name and USPS bar code. (*See* Exhibit "6" depo. testimony of Robert Flynn, CFO of RevSpring, taken Feb. 15, 2013 at pp. 27-31). The account number visible through the envelope "corresponds to the [Convergent] account number" and is visible without any type of scanning device. (*Id.* at p. 30).[2]

In the SAC, Douglass alleges that Convergent's placement of the assigned E.R.S. (now Convergent) account number through the window of the envelope violates the Fair Debt Collection Practices Act at 15 U.S.C. § 1692f(8), which prohibits any such disclosure. Ms. Douglass brought this action on her own behalf and on behalf of a Class of all persons with addresses in Montgomery County, Pennsylvania, who received a similar letter. (SAC ¶ 17-18). Defendant has stated in

---

[2]      Plaintiff did not pursue the issue involving the QR Code.

response to discovery that 2504 of the subject letters, in the same format as the Douglass letter, were mailed to Montgomery County consumers in the attempt to collect a consumer debt for T-Mobile during the Class period. (*See* Exhibit "7" hereto, Defendant's Response to Plaintiff's First Supplemental Interrogatories at pp. 3-4; *see also* statement of facts as confirmed in email correspondence between defense counsel, Ed Walton and Plaintiff's counsel, Cary L. Flitter, dated January 2, 2013, Exhibit "8" hereto).

On November 30, 2012, Convergent filed a Motion for Summary Judgment, arguing that the court should adopt a "benign language" exception to the statute and that, based upon the cases that adopted such an exception, display of the assigned account number does not violate. (Doc. No. 36). The Court set a schedule for further discovery and briefing. On May 15, 2013, Douglass filed her Response in Opposition, (Doc. No. 52), and on May 21, 2013, Convergent filed a Reply in Support of Summary Judgment. (Doc. No. 54). On May 29, 2013, the Court heard argument on the Motion for Summary Judgment, deferring any consideration of Plaintiff's Motion for Class Certification. (Doc. No. 49). After oral argument, Plaintiff submitted a supplemental brief in opposition, addressing some questions raised. (Doc. No. 60). On June 17, 2013, Defendant filed a third brief in support of summary judgment. (Doc. No. 61). On August 6, 2013, the Court granted Defendant's Motion for Summary Judgment and entered judgment in favor of the Defendant Convergent Outsourcing (Doc. No. 63). Douglass timely filed a Notice of Appeal on August 23, 2013. By Judgment and Opinion dated August 28, 2014, the U.S. Court of Appeals for the Third Circuit vacated the judgment for Convergent and remanded the case for further proceedings. *Douglass v. Convergent Outsourcing*, 765 F.3d 299 (3d Cir. 2014). Upon remand, the parties engaged in settlement discussions over the course of several weeks, and now present the Court with a Settlement Agreement which they ask the Court to preliminarily approve.

## B.    Class Action Overview

The FDCPA specifically contemplates the class action as a tool of enforcement.  15 U.S.C.
§ 1692k(a)(2), (b)(2).  As recognized by our Court of Appeals, Congress intended the FDCPA to
be enforced by debtors acting as private attorneys general, and specifically by the private class
action mechanism.  *Weiss v. Regal Collections*, 385 F.3d at 345 and n.13 (class actions are "well-
suited to the FDCPA").  Cases challenging the legality of form collection notices have been
routinely certified in this district, because they represent a paradigm of Rule 23's requirements.
*See e.g., Harlan v. Transworld Sys., Inc.,* 302 F.R.D. 319, 328 (E.D. Pa. 2014) (certifying FDCPA
class for settlement); *Rosenau v. Unifund Corp.*, 646 F.Supp.2d 743, 747 (E.D. Pa. 2009) (class
certified on contest, then settled, in FDCPA letter case); *McCall v. Drive Financial Serv.*, 236
F.R.D. 246 (E.D. Pa. 2006) (FDCPA class certified over form collection letter); *Jordan v.
Commonwealth Fin. Sys.,* 237 F.R.D. 132 (E.D. Pa. 2006) (same).

The Act provides that statutory damages in a class case are capped at the lesser of 1% of
the debt collector's net worth or $500,000.00.  15 U.S.C. § 1692k(a)(2)(B).  Pursuant to discovery
requests, Convergent has represented that its net worth exceeds $50 million dollars.  (*See* Exhibit
"8", statement of fact confirmed in email between counsel; setting forth Convergent's net worth
at $95,049,120).  Thus, the potential class recovery at trial, or 1% of Convergent's net worth, is
capped at $500,000.00 (a sum, which, divided among the 2504 Class Members, would yield about
$199.68 per capita).  Settlement avoids the need for the Court or a jury to determine the contested
question of liability, or the extent of damages available under the FDCPA.[3]

---

[3]        After remand, Convergent raised the issue of a diminution in net worth to approximately $35,000,000.00,
which would cap recovery at $350,000.00.  In light of the Class settlement, Plaintiff has not taken additional discovery
on this point.

In settlement of this suit, the Defendant will create a Settlement Fund of $250,400.00, yielding $100.00 payments to the Class Members. (Exhibit "2", Settlement Agreement, ¶ 15(A)). Defendant will also pay, subject to Court approval, Class Counsel fees and litigation expenses in an amount of $295,000.00 and costs of up to $20,000.00. (Id. at ¶ 16). At the time of final approval, Plaintiff will make appropriate request for approval of Class Counsel fees and costs. Additionally, as part of the settlement, Defendant has agreed to pay Plaintiff Douglass an individual award of $1,000.00 and seek a class representative service award of $2,500.00, plus any share in the class recovery. (Id. at ¶ 15(D)). *See Fry v. Hayt, Hayt and Landau*, 198 F.R.D. 461, 472 (E.D. Pa. 2000) (holding named plaintiff, may, under FDCPA, receive her statutory recovery plus any share of class recovery under unique wording of Act); *Rosenau v. Unifund Corp.*, 646 F. Supp. 2d 743, 755 (E.D. Pa. 2009) (discussing propriety of incentive award in FDCPA class settlement). Defendant has also agreed to change the form of its letter. (Exhibit "2", Settlement Agreement, ¶ 15(E)).

For the reasons which follow, Plaintiff submits that this is a favorable settlement for the Class. The settlement should be preliminarily approved and notice permitted to issue.

## III. ELEMENTS FOR CLASS CERTIFICATION ARE MET

### A. Standard for Class Certification

"[B]efore approving a class settlement agreement, a district court first must determine that the requirements for class certification under Rule 23(a) and (b) are met." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 296 (3d Cir. 2011) (*en banc*) (internal quotation marks omitted)). At this stage, the Court is to make "a 'preliminary determination' on class action certification for purposes of issuing notices of settlement …" *In re NFL Players Concussion Injury Litig.*, 775 F.3d 570, 586 (3d Cir. 2014). After Notice has issued, and at the final approval stage, the district court must

apply a rigorous analysis of the Rule 23 elements, while mindful of the strong judicial policy in favor of class action settlement. *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 380 (3d Cir. 2013).

Routinely, the four Rule 23(a) requirements are described as "numerosity," "commonality," "typicality," and "adequate representation." *Montgomery Cnty., Pa. ex rel. Becker v. MERSCORP, Inc.*, 298 F.R.D. 202, 209 (E.D. Pa. 2014). In order for a class to be certified, all four requirements of Rule 23(a) must be satisfied along with one of the three categories of Rule 23(b). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997); *McCall v. Drive Fin. Servs., L.P.*, 236 F.R.D. 246, 249 (E.D. Pa. 2006); *Parks v. Portnoff Law Associates, Ltd.*, 210 F.R.D. 146, 149 (E.D. Pa. 2002). Certification here is sought under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," such that "a class action is superior to other methods for fairly and efficiently adjudicating the controversy." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2558 (2011). All the required Rule 23 elements are met here.

### B. The Proposed Class Meets the Requirements for Certification

#### 1. Rule 23(a)(1) – At 2504 Consumers, the Class is Sufficiently Numerous

Rule 23(a)(1) of the Federal Rules of Civil Procedure requires that the class be "so numerous that joinder of all members is impracticable." *Weiss v. York Hosp.*, 745 F.2d 786, 808 (3d Cir. 1984). Our Court of Appeals has held that generally a class of more than 40 satisfies the numerosity requirement. *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001); *Sherman v. Am. Eagle Express, Inc.*, 2012 WL 748400, *4 (E.D. Pa. Mar. 8, 2012).

In response to discovery requests, Convergent represented that it sent the subject collection communication to 2504 Montgomery County, Pennsylvania consumers. (*See* Exhibit "7" hereto, Defendant's Response to Plaintiff's First Supplemental Interrogatories at pp. 3-4; *see also*

statement of fact memorialized in emails between Ed Walton, counsel for Defendant and Cary L. Flitter, counsel for Plaintiff, dated January 2, 2013, Exhibit "8" hereto). Defendant has compiled the list of the names and last known addresses of the identified Class Members and will provide the list upon preliminary approval of the class settlement. (Ex. "2", Settlement Agreement at ¶ 7(B)). Joinder of all 2504 members of the Class is impracticable and, accordingly, Rule 23(a)(1)'s numerosity requirement is readily met.

### 2. Rule 23(a)(2) – Convergent's Standard Form Collection Letter Presents Common Issues of Law and Fact

Turning to the second component of Rule 23(a), "commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Dukes*, 131 S. Ct. at 2551 (citations omitted). It is the law in the Third Circuit that a putative class satisfies the commonality requirement if "the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Rodriguez*, 726 F.3d at 382 (quoting *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir.1994)). Not all factual or legal questions raised in the litigation need be common so long as at least one issue is common to all Class Members. *Baby Neal*, 43 F.3d at 56-57; *Lake v. First Nationwide Bank*, 156 F.R.D. 615, 624 (E.D. Pa. 1994); *Tenuto v. Transworld Sys., Inc.*, 2000 WL 1470213 at *2 (E.D. Pa. Sept. 29, 2000) (holding consumer's theory which rests upon the "same facts about the [collection] letter and defendant's collection practices" towards the class members establishes commonality for FDCPA class).

Where the defendant has engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters or documents, the commonality requirement is generally met. *Harlan*, 302 F.R.D. at 328; *Chakejian v. Equifax Inf. Srvs., Inc.*, 256 F.R.D. 492, 497 (E.D. Pa. 2009); *McCall*, 236 F.R.D. at 250. As stated by Judge Davis of this Court, "Because [class representative's claims] are based entirely upon the uniform, non-

individualized content of defendants' standardized debt collection letters, [the FDCPA claims] are factually and legally common to the proposed classes." *Jordan*, 237 F.R.D. at 138.

There are questions of law and fact common to the Class. Factually, Convergent considers the letter it sent to Douglass and the Class, the "R241 letter", to be a form letter. (Exhibit "5", Burton depo. at pp. 41-42). There is no dispute that Defendant used a window envelope through which account number printout was visible. (Exhibit "6", Flynn depo. at pp. 27-31). In the case of each Class Member, there is no dispute that these letters were sent to collect alleged debts incurred for consumer purposes (i.e., for personal, family or household purchases). (*See* Exhibit "9", letter agreement dated December 12, 2012). The class of 2504 Montgomery County consumers is easily ascertainable from Defendant's own records. *See Harlan,* 302 F.R.D. at 328, n.14 (class readily ascertainable in FDCPA letter case).

The primary legal questions presented are (1) whether Defendant's form collection letter and envelope bear an account number, i.e. reveals language or symbols disallowed by § 1692f(8); (2) whether Defendant's collection communication constitutes unfair or unconscionable collection practices under 15 U.S.C. § 1692f; and, if liability is established; (3) what is the statutory damage to be awarded to the class as a whole. 15 U.S.C. § 1692k(a)(2)(b). What "matters to class certification … is the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Dukes*, 131 S. Ct. at 2551. These questions are common to all Class Members' claims.

### 3. Rule 23(a)(3) – Typicality is Met as Ms. Douglass Presses the Same Claim as Every Member of the Class

Rule 23(a)(3) requires that the claims of the named plaintiff be typical of the claims of the Class. A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other Class Members and his or her claims are based on the same

legal theory. *Baby Neal*, 43 F.3d at 57. The typicality requirement may be satisfied even if there are some factual distinctions between the claims of the named plaintiff and those of other Class Members. *Id.* at 57-58; *Stewart v. Associates Consumer Discount Co.*, 183 F.R.D. 189, 196 (E.D. Pa. 1998). Here, all Class Members received a collection communication substantially identical to the one received by Ms. Douglass, *i.e.*, with the account number visible through the window. This uniform collection communication to members of the Class forms the basis of the class claim.

Typicality is inherent in the class definition, *i.e.*, each of the Class Members were subjected to the same communication and same violation as the named Plaintiff. All Class Members' claims arise from the same practices by Defendant which gave rise to Ms. Douglass' claims – each Class Member was sent a collection envelope which revealed their account number. *See McCall*, 236 F.R.D. at 250. This prong is especially easy to meet here because the claim does not turn on Ms. Douglass' own subjective reaction to the letter. Rather, Defendant is subject to strict liability for violating § 1692f. *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 (3d Cir. 2011). There are no unique facts or circumstances that would render Ms. Douglass atypical. The typicality requirement is met.

### 4. <u>Rule 23(a)(4) – Ms. Douglass and Her Counsel are Adequate</u>

Rule 23 also requires that the named plaintiff provide fair and adequate protection for the interests of the Class. Fed. R. Civ. P. 23(a)(4). This requirement "assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class." *Allen v. Holiday Universal*, 249 F.R.D. 166, 180 (E.D. Pa. 2008) (citing *Baby Neal,* 43 F.3d at 55). Satisfying this requirement involves two factors: (1) whether plaintiff's counsel is qualified, experienced and generally able to conduct the proposed litigation, and (2) whether the plaintiff has interests

antagonistic to those of the class. *See Allen*, 249 F.R.D. at 180; *McCall*, 236 F.R.D at 250; *Lake*, 156 F.R.D. at 624. Both prongs are readily met here.

Ms. Douglass is represented by counsel experienced in consumer class action litigation. Cary L. Flitter and Flitter Lorenz, P.C. have been appointed as competent counsel by this Court and others in dozens of consumer class actions. Flitter serves on the adjunct faculty (consumer protection law) at Temple University's Beasley School of Law and Widener University School of Law, and is co-author of *Pennsylvania Consumer Law*, Geo. Bisel Publishing Co. A full statement of qualifications is included within the Certification of Cary L. Flitter attached hereto as Exhibit "10". Andrew M. Milz, Esquire will also represent Ms. Douglass and the Class. Mr. Milz is an associate of the Flitter Lorenz firm where he has worked on consumer credit litigation, including several class action matters under the federal consumer protection laws. Milz is a published author and lecturer on consumer law issues, with trial and appellate experience in consumer protection and class action law. (Exhibit "11" hereto, Milz Certification). As recently recognized by this Court, "Cary L. Flitter and Andrew M. Milz are experienced class action litigators under federal consumer protection laws such as the FDCPA." *Harlan v. Transworld Sys.*, 2015 WL 505400, *4 (E.D.Pa. Feb. 6, 2015). SaraEllen Hutchison, of Spokane, WA, has been admitted *pro hac vice* counsel and has assisted in the prosecution of this case as counsel. (*See* Exhibit "10", Flitter Cert. at ¶ 25).

There is also nothing to suggest that Plaintiff Douglass has any interest antagonistic to the Class. Ms. Douglass is prepared to vigorously pursue this lawsuit filed on behalf of herself and the Class of Montgomery County, Pennsylvania residents designated in the Complaint. She has maintained regular contact with counsel, endured a day-long deposition, has been closely involved in approving settlement terms, and has generally gone out of her way to assure the best result for

the class she represents. There are no individualized issues, for example, of reliance or intent, or defenses unique to Ms. Douglass. Given the identical nature of the claims and class damages between the Plaintiff and the Class Members, there is no potential for conflicting interests in the class action. *See Allen*, 249 F.R.D. at 180.

Plaintiff respectfully submits that the adequacy prong is readily met, as are all of the elements of Rule 23(a).

### 5. <u>Rule 23(b)(3) – Common Questions of Law or Fact Predominate</u>

Rule 23(b)(3) requires that the questions of law or fact common to all members of the Class predominate over questions pertaining to individual members. *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). This criterion is normally satisfied when there is an essential common factual link between all Class Members and the Defendant for which the law provides a remedy. *See Lake*, 156 F.R.D. at 625. In this case, the "common nucleus of operative fact" is that all Class Members were sent collection communications from Convergent that revealed the consumers' account number through the window of the envelope.

Predominance is generally established in cases dealing with the legality of standardized documents and practices because the document is the focal point of the analysis. *McCall*, 236 F.R.D. at 254 (FDCPA class, predominance readily met). Here, the claims of the Class arise from the same collection communication and envelope, and the same practices of Defendant Convergent.

In addition, there is a uniform statutory damages provision under the FDCPA for class action matters. 15 U.S.C. § 1692k(a)(2). No concern is present over the damage calculation – the statutory damage formula is uniformly applied across the class. 15 U.S.C. § 1692k(a)(2); *compare*

*Behrend*, 133 S. Ct. 1426 (complex damage matrix may impede predominance). Both the issues of fact and the issues of law are straight forward, and predominate.

### 6. Rule 23(b)3) – A Class Action is Superior to Other Available Methods to Resolve this Controversy

Superiority is the final element of class certification pursuant to Rule 23(b)(3). *In re Prudential Ins. Co. of America Sales Practices Litig.*, 148 F.3d 283, 315 (3d Cir. 1998); *Lake*, 156 F.R.D. at 625. The superiority element requires courts "to balance, in terms of fairness and efficiency, the merits of a class action against those of 'alternative available methods of adjudication.'" *MERSCORP*, 298 F.R.D. at 216 (*citing In re Community Bank of N. Va.*, 418 F.3d at 309). Efficiency is a primary focus in determining whether the class action is the superior method for resolving the controversy presented. *Id.; Lake*, 156 F.R.D. at 625-26. It is proper for a court, in deciding the best available method, to consider the "… inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." *Lake,* 156 F.R.D. at 626.

In this case, there is no better method available for the adjudication of the claims which might be brought by each individual debtor subjected to Defendant's practices. Class actions are simply a more efficient and consistent means of trying the legality of a form collection communication. *Jordan,* 237 F.R.D. at 139-40; *Tenuto,* 2000 WL 1470213 at *4. This Court has recognized that, due to the limits on class recovery, defining the class to a particular geographic area (here, Montgomery County) "is to Class members' advantage because the total recovery will be divided under a smaller number of individuals than if the class were defined more broadly." *Harlan*, 302 F.R.D. at 326, n. 11.

The Third Circuit has recognized the efficacy of FDCPA class actions where the individual's claim is small:

A significant benefit to claimants who choose to litigate their individual claims in a class-action context is the prospect of reducing their costs of litigation, particularly attorney's fees, by allocating such costs among all members of the class who benefit from the recovery." The Supreme Court also commented that "[c]lass actions … may permit the plaintiffs to pool claims which would be uneconomical to litigate individually. For example, this lawsuit involves claims averaging about $100 per plaintiff; most of the plaintiffs would have no realistic day in Court if a class action were not available." This "[c]ost-spreading can also enhance the means for private attorney general enforcement and the resulting deterrence of wrongdoing."

*Weiss*, 385 F.3d at 344-45. One of the primary functions of the class suit is to provide a device for vindicating claims, which, taken individually, are too small to justify legal action but which are of significant size if taken as a group. *Id.*; *Lake*, 156 F.R.D. at 628-29.

As one Court observed:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves of this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997), *quoted with approval in Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997); *accord Weiss*, 385 F.3d at 344-45. Here, there will be a Class Settlement Fund of $250,400.00. At that figure, each Class Member will receive a check for $100.00. The settlement also represents a superior means of resolution in that Defendant has agreed as part of the settlement to change its form of letter. (Exhibit 2, ¶ 15E). This is an excellent recovery and a superior way to proceed.

IV. **THE CLASS SETTLEMENT SATISFIES THE REQUIREMENTS FOR PRELIMINARY APPROVAL**

A. **Standards for Preliminary Approval**

When a proposed class-wide settlement is reached, it must be submitted to the Court for approval. Fed. R. Civ. P. 23(e); *In re Flonase Antitr. Litig.*, 291 F.R.D. 93, 98 (E.D. Pa. 2013); *Oslan*, 232 F. Supp. 2d at 439-40. The procedure for approval of a proposed Class Action Settlement involves a two-step process: (1) a "preliminary approval" order; and (2) a "final approval" order after notice of the settlement is provided to the class and a hearing to consider the fairness of the proposed settlement has been held. *See* MANUAL FOR COMPLEX LITIGATION, Fourth (2004) ("MCL") §§ 21.632; *Gates v. Rohm and Haas Co.*, 248 F.R.D. 434, 438 (E.D. Pa. 2008).

In considering preliminary approval, courts make an initial evaluation of the fairness of the settlement, prior to notice. Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the Class and falls within the range of possible approval, preliminary approval is warranted. *Id.* at 439; *MCL* 4th § 21.632. When determining preliminary approval, the issue before a court is whether the proposed settlement appears fair, reasonable and adequate. *Gates*, 248 F.R.D. at 438. In undertaking its analysis, courts give substantial weight to the experience of the attorneys who prosecuted the case and negotiated the settlement. *See In re Fasteners Antitr. Litig.*, 2014 WL 285076 at *4 (E.D. Pa. Jan. 24, 2014) (citing cases; recognizing "courts have given considerable weight to the views of experienced counsel as to the merits of a settlement.").

There is a presumption in favor of voluntary settlement agreements. *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594 (3d Cir. 2010). "This presumption is especially strong in 'class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal

litigation.'" *Id. (quoting In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,*
55 F.3d 768, 784 (3d Cir. 1995)).

### B. **Preliminary Approval Should be Granted**

#### 1. **The Settlement was Reached After Arms-Length Negotiations**

This case was filed nearly three years ago, in March 2012. Since then, the parties have
engaged in pitched litigation – including summary judgment and class certification motion practice
as well as a Third Circuit appeal. (See Section II.A. *supra* detailing procedural history). Written
class and merits discovery was propounded by Plaintiff and answered by Defendant. Plaintiff took
depositions of Defendant's corporate designees Anne Carlson and Jeffrey Hunter, the deposition
of Convergent's Lisa Burton, Robert Flynn of Rev Spring (the mailhouse), and Defendant's expert
Kevin Barrows. For its part, Defendant deposed Ms. Douglass and her expert, Evan Hendricks.
Thereafter summary judgment was entered in favor of Convergent. That ruling was appealed and
the summary judgment vacated. On remand, after the Court set a new Scheduling Order, the
parties renewed their attempt to resolve the matter on a classwide basis. After negotiating for
weeks, an agreement was reached in principle. (*See* Certification of Cary L. Flitter, Esq., Exhibit
"10" at ¶ 28). The parties negotiated the cash relief, the content of the proposed Class Notice, the
identity of the *cy pres* beneficiary among other discrete issues. Defendant also agreed to modify
its communication in order to comply with the Act. (Exhibit "2", Settlement Agreement ¶ 15(E)).
The litigation, as well as the settlement negotiations resulted in an Agreement which was the
product of serious, informed, non-collusive negotiations among counsel.

#### 2. **The Settlement is Fair and Contains No Deficiencies**

The consideration provided for in the Settlement Agreement is substantial. If this
settlement is approved at $250,400.00 for the Class, each Class Member can expect to receive a

check for $100.00. No actual damages were sought by this class case. This is more than half of the best-case classwide recovery (potentially $199 per capita if awarded maximum damages at trial), and represents an excellent result – one that exceeds recoveries in many other FDCPA class cases settled and approved in this Circuit. *See e.g. Little-King v. Hayt & Landau,* 2013 WL 4874349 (D.N.J. Sept. 10, 2013) ($7.87 per class member); *Bonett v. Educ. Debt Servs., Inc.*, 2003 WL 21658267 (E.D. Pa. May 9, 2003) ($77 per class member); *Oslan,* 232 F.Supp.2d 436 ($62 per class member).

Plaintiff will request attorney fees not to exceed $295,000.00, representing a capped amount well below counsel's lodestar. Plaintiff also seeks reimbursement of litigation costs up to $20,000.00. The payment of fees and costs is expressly called for under the FDCPA, 15 U.S.C. § 1692k(a)(3). These statutory counsel fees are designed to encourage competent counsel to accept fee-shifting cases on a contingent basis. *See Graziano,* 950 F. 2d at 111-13. There is no requirement that the amount of attorney fees awarded be proportionate to the amount of recovery. *Morris v. I.C. Sys., Inc.*, 2009 WL 1362594 (E.D. Pa. May 15, 2009). Class Counsel's fees – after years of litigation and a Third Circuit appeal – exceed this amount, but Counsel has agreed to cap its request to facilitate settlement. Convergent has agreed to pay and not oppose the fees and costs in these amounts. (Plaintiff's motion for approval of attorney fees and costs will accompany the motion for final approval of the class settlement).

Convergent has also agreed to pay Ms. Douglass $1,000.00 for her individual statutory damages under the FDCPA as well as a service award of $2,500.00. As stated by Judge Rufe in an FDCPA case, such awards are "surely proper to provide reasonable incentives to individual plaintiffs whose willingness to participate as lead plaintiffs allows class actions to proceed and so confer benefits to broader classes of plaintiffs." *Rosenau v. Unifund Corp.*, 646 F. Supp. 2d 743,

755 (E.D. Pa. 2009) ($1,000 in statutory damages plus $3,000 service award approved in FDCPA case); *Orloff v. Syndicated Office Sys., Inc.*, 2004 WL 870691 (E.D. Pa. Apr. 22, 2004) ($5,000 service award in FDCPA case).

In exchange for the above consideration, Convergent obtains a release of class member claims for damages stemming from the offensive collection communication. Importantly, the release is narrowly tailored only to those particular claims arising from the challenged letter. (See Exhibit "2", Settlement Agreement. at ¶ 1E).

The aggregate settlement contains a substantial cash benefit to Class Members, contains no obvious deficiencies, and should be approved.

### 3.   **The Settlement is Within the Range of Reasonableness**

The reasonableness of a proposed settlement depends in part upon a comparison of the present value of the damages the plaintiff would recover if successful, discounted by the risks of not prevailing. *Boone v. City of Philadelphia*, 668 F. Supp. 2d 693, 712 (E.D. Pa. 2009) (*citing In re General Motors*, 55 F.3d at 806).

As stated above, in a class action case the FDCPA limits recovery to the lesser of $500,000.00 or 1% of the defendant's net worth, 15 U.S.C. § 1692k(a)(2); *see Rosenau*, 646 F. Supp. 2d at 753 (discussing risks of establishing net worth in FDCPA case). Convergent had a net worth of over $50 million, (asserted by Defendant to have dropped to some $35,000,000.00) thus capping class statutory damages at 1% or $500,000 to be shared by the 2504 Class Members. Accordingly, if Plaintiff were able to convince a jury at trial that the level of noncompliance with the FDCPA was frequent, pervasive and intentional as to command the maximum statutory award, each of the 2504 Class Member would be entitled to a maximum of about $199. The settlement

here provides $100 per class member - more than half of the best possible class recovery at trial, yet without the delay, risk, uncertainty and cost of continued litigation.

### 4. Class Counsel Recommends the Settlement

Class Counsel has extensive experience in class action litigation in the areas of consumer protection law and the FDCPA, and are thoroughly familiar with the factual and legal issues of the case. (*See* Flitter Cert., Exhibit "10"). The Settlement followed a thorough investigation by Class Counsel into the merits of the case, litigation and discovery. Counsel briefed the merits of Ms. Douglass' claim – defending it in opposition to Defendant's Motion for Summary Judgment and in the subsequent Third Circuit appeal. Counsel have analyzed each of Defendant's arguments against the merits of Ms. Douglass' claim, Defendant's affirmative defenses, and any potential arguments against class certification, and has thus developed an appreciation about the time and effort that future, prolonged litigation would entail. (Id.).

Plaintiff briefed and opposed all of Convergent's arguments during the litigation and is satisfied she has the better of the arguments about each. Nonetheless, litigation comes with inherent risks that must be weighed against the strengths of the Class's case. Given Defendant's strategy to date, continued litigation would certainly entail further Class and dispositive motion practice, trial and the possibility of another appeal (each with attendant briefing), and the passage of months and years before Class Members would see any relief from this case.

For all these reasons, Class Counsel recommend the settlement for preliminary approval and issuance of notice.

## V. CLASS NOTICE

With the Settlement Agreement and this Motion, Plaintiff submits a proposed form of Notice to the Class. A true and correct copy of the proposed Class Notice is appended hereto as

Exhibit "4". (Of course, the blanks for dates will be filled in before mailing). In plain-English, the Notice informs Class Members regarding (a) formation of the Class; (b) the Class definition; (c) claims, defenses and issues in the case; (d) terms of the proposed settlement; (e) the request for an award of attorney's fees and expenses to Class Counsel; (f) the agreed individual settlement payment to representative Plaintiff; (g) the Class Member's right to opt-out, and thereby not participate in the proposed settlement; (h) Class Member's right to appear and object to the proposed settlement; (i) the time, date and location of the final approval hearing; and (j) Class Member's right to appear at the final approval hearing in favor of or in opposition to the proposed settlement.

The proposed Notice comports with the requirements of Rule 23(c) and 23(e) as amended, and with the Court of Appeals' decision in *Wachtel v. Guardian Life Ins. Co. of Am.*, 453 F.3d 179, 185 n.6 (3d Cir. 2006), recommending plain-English class notices. The Notice is clear and reader friendly, and provides Class Members with sufficient information to make an intelligent decision as to whether to remain in the Class, opt-out, or object to any aspect of the proposed settlement. Plaintiff has looked to, indeed borrowed from, the recommended notices provided by the Federal Judicial Center's website, www.fjc.gov. Administration of Notice, opt-outs, objections and settlement checks will be handled by First Class, Inc. an experienced Claims Administrator based in Chicago. (Exhibit "2", Settlement Agreement ¶ 6).

Plaintiff proposed Notice by first class mail, which comports with Fed. R. Civ. P. 23(c)(2) requiring the best notice practicable under the circumstances. *See Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 113 (E.D. Pa. 2005) (approving mail notice in FDCPA class settlement).

## VI.    <u>CONCLUSION</u>

The proposed settlement puts an end to this litigation, and falls well within the range of a fair, reasonable and adequate award. Preliminary approval should be granted, and the Class Notice approved and directed in the form proffered. Defendant consents to preliminary approval. Further, the proposed settlement Class meets the requirements of Rules 23(a) as well as Rule 23(b)(3). Plaintiff Courtney Douglass respectfully requests that the Court preliminarily approve the Class settlement pursuant to Rule 23.

Date: 2/27/15

                                            */s/ Cary L. Flitter*
                                            CARY L. FLITTER
                                            THEODORE E. LORENZ
                                            ANDREW M. MILZ

FLITTER LORENZ, P.C.
450 N. Narberth Avenue, Suite 101
Narberth, PA 19072
(610) 822-0782

SARAELLEN HUTCHISON
LAW OFFICE OF SARAELLEN
HUTCHISON, PLLC
505 W. Riverside, Suite 521
Spokane, WA 99201
(509) 252-1899

**Attorneys for Plaintiff and the Class**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COURTNEY DOUGLASS *on behalf of herself and all others similarly situated,* <br><br> Plaintiff <br><br> vs. <br><br> CONVERGENT OUTSOURCING, f/k/a/ ER SOLUTIONS, INC. <br> Defendant | NO. 12-1524(JHS) <br><br><br><br><br><br> CLASS ACTION |

## CERTIFICATE OF SERVICE

I, CARY L. FLITTER, hereby certify that a copy of Plaintiff's Motion for Preliminary

Approval of Class Settlement (Uncontested) has been electronically filed with the Clerk of Court

using the CM/ECF system, which sent notification of such filing to:

Richard J. Perr
FINEMAN, KREKSTEIN & HARRIS, P.C.
Mellon Bank Center
1735 Market Street, Suite 600
Philadelphia, PA 19103

Said document is available for viewing and downloading from the ECF system.

Date: February 27, 2015

/s/ Cary L. Flitter
CARY L. FLITTER